## WINTERS *v.* HUGHES.

[JANUARY TERM, 1861.]

A SUMMONS WHICH FAILS TO STATE THE TIME AND PLACE AT WHICH A DEFENDANT is required to appear and answer the complaint filed against him is defective, and will be quashed upon motion interposed before appearance and plea.

THE LEGISLATIVE POWER CONFERRED UPON THE TERRITORIAL LEGISLATURE by the organic act can not be delegated.

SECTIONS 9 AND 16 OF THE ORGANIC ACT IMPOSE THE DUTY UPON THE TERRITORIAL LEGISLATURE of fixing by law the times and places at which judges of the supreme court should hold sessions of the district courts; and the act of January 19, 1855, providing that upon petition of not less than one hundred voters and tax-payers in any judicial district the judge of such district shall hold a special session of the court at the time and place specified in the petition, attempts to delegate the legislative power conferred upon the territorial legislature, and is void.

THE ACT OF JANUARY 19, 1855, IS IN CONFLICT WITH THE ACT OF THE TERRITORIAL LEGISLATURE OF JANUARY 21, 1859, providing for the district courts to convene at the county seat of any county to try cases arising therein, upon petition of three fourths of the electors in such county, and was by implication repealed thereby.

THE ACT OF CONGRESS AUTHORIZING THE JUDGES OF THE SUPREME COURT to fix a time and place in each of the districts for holding the district courts, conferred authority only for holding federal courts of the district, and not for holding territorial courts to try causes arising under territorial laws, and the act of the territorial legislature of January 21, 1859, is not in conflict therewith.

APPEAL from the second district, Carson county. The opinion states the facts.

No attorney of record for the appellant.

*J. H. Ralston*, for the respondent.

KINNEY, C. J.:

J. H. Atchison and Theodore Winters, on the twenty-first day of January, 1860, made their joint and several note for the sum of fifteen thousand dollars, payable to Francis J. Hughes on the first day of June following, and to secure the payment, executed a mortgage deed on a certain mining claim of gold and silver bearing earth and quartz. Only a portion of the note having been paid, a bill to foreclose the equity of redemption of the mortgagors was filed, writ issued and served upon Winters, and returned "not found" as to Atchison. Winters came into court, and his first step in pleading was taken by filing the following motion:

"Now comes Theodore Winters, one of the defendants in the above-entitled action, and moves to set aside the notice and summons in the said action, for the following reasons:

1. Because the place at which the investigation or trial is to be had is not mentioned in said summons or notice, and the defendant is not informed where he is to appear; 2. Because it does not appear from the summons or notice in what clerk's office the summons is filed, or in what county the same can be found."

This motion was overruled, to which the defendant excepted. Winters then demurred to the complaint for similar reasons, with the additional one that there were not sufficient facts stated to give the court jurisdiction. The demurrer was overruled and exceptions filed. Winters abiding by his demurrer, a decree was rendered against the defendants for the sum of ten thousand and thirty-two dollars, and ordering a sale of the mortgaged property.

The following bill of exceptions appears of record: "Be it remembered, that this case came on for trial on this thirty-first day of July, 1860, at the speciel term of said court held at Carson city, in the said county of Carson and territory aforesaid, at a town called Carson city, a place distant more than ten miles from the town of Genoa, the county seat of said county; and the defendant Theodore Winters objects to the jurisdiction of the said court to try or render judgment in the said action: 1. Because there is no authority of law whereby the said special term of court can be held; 2. Because the said court was held at the said town of Carson city, and not at the county seat of said county."

The court overruled the objections, and the said Winter then and there at the proper time excepted.

Upon this state of the record, Winters abandoned the cause below, appeals to this court, and assigns for error the overruling of the motion to quash the writ, the overruling of the demurrer, and contends in addition that the court erred in overruling the objections set forth in the bill of exceptions.

With the views entertained by this court upon the main question, the right of the judge to hold the court and render the judgment under the then existing laws, it is unnecessary to consider whether the court erred in overruling the motion to quash the writ, and we only do so for the purpose of settling the practice. Section 2 of the revised laws provides "that when a complaint is filed, the court shall issue to the defend-

ant a notice containing a copy of the complaint, and the time and place for the investigation thereof:" R. L. 133.

The notice was issued to the marshal of the territory, commanding him to notify the defendants that the plaintiff had filed in the clerk's office of the district court for the second judicial district his complaint, and the marshal was further commanded to summon the said defendants to be and appear before the said district court within ten days after the return day thereof, and failing so to do, judgment would be taken by default. This notice was not in compliance with the statute. The legislature can prescribe the manner in which a party may be brought into court, and the method pointed out by law must be substantially followed. Neither time nor place is mentioned, and both are essential under the statute to constitute a legal notice to the defendant. "Ten days after the return" is too vague and indefinite, and is really equivalent to leaving the time blank, for how is the defendant to know when the officer makes his return?

Certainly he is not obliged to travel miles at different times to ascertain whether the return has been made. The legislature has very wisely provided that the time shall be fixed in the notice for the appearance of the defendant. This is necessary in order to give him opportunity to prepare for trial, and to inform him of the precise day on which to appear with his witnesses. The place also is omitted. This could not be done without a direct violation of the law. The statute is peremptory and must be complied with. All territorial legislation not in conflict with the constitution of the United States or acts of congress should be observed and obeyed by the courts, and they have no right in administering the laws to disregard or set it at defiance.

We have no hesitation in saying that the court erred in overruling the motion to dismiss the writ. If the defendant had appeared and pleaded without first interposing the motion, the case would be entirely different, but such was not the fact, and his motion was well taken.

But the grand question before us, and the one that has been argued with much ability, is whether the judge under the then existing territorial laws had any right to hold the court at all. We have hesitated much before pronouncing a

decision which strikes at the very existence of the court, and would willingly avoid a judgment which renders the decree of the court below *coram non judice.* But it is the duty of this court to declare the law as it is without being influenced by supposed consequences, however serious or startling in their consequences.

Fortunately, the record of the appeal now under consideration is the only one from the second judicial district which properly presents the question of the right of the judge to hold the court. In the other cases no objection was made at the right time to the jurisdiction, and no principle of law is better settled than that in all courts of general original jurisdiction if the defendant pleads he admits the jurisdiction, unless the record itself shows the proceedings to have been *coram non judice.* The objection to the jurisdiction must be first raised in the court below, or it can not be considered in this court, unless the want of power to hear and determine is clearly apparent upon the record : *Caudell* v. *Thorp,* 1 G. Greene, 95 ; S. C., 1 Morr. 156, 438.

The bill of exceptions in this case fully presents the question. It was objected that the court had no jurisdiction to render judgment, because there was no authority of law for holding a special term of court, and because said court was held at Carson City instead of Genoa, the county seat of said county. By the act approved January 19, 1855, R. L. 258, sec. 4, it is provided that upon petition of not less than one hundred legal voters and tax-payers residing in any judicial district, the judge of said district shall hold a special session of court at the time and place specified in the petition, unless a remonstrance of like number be seasonably presented. As the record discloses the fact that the court was one of special session, it undoubtedly follows that it was held by virtue of the authority conferred by this statute.

The legislature, however, at a subsequent session passed an act, approved January 21, 1859, empowering the district courts to sit at the county seat of any county within its district, to try cases arising in such county, whenever three fourths of the electors in said county should, in writing to that effect signed by them, petition the judge of the district to hold a term of court in said county; provided that the

county court of said county make provision to defray the expenses of said district court. This act contained a repealing clause: Laws 1858–9, p. 8, secs. 14, 17.

Two questions are presented by the assignment of errors and the argument: 1. Whether the prior law is repealed by the subsequent; and 2. Whether the legislature has the constitutional right under the organic act to provide in this way for holding courts.

Are the acts in conflict? Both are intended for the same object, to wit, to provide for holding courts; and if both can not be sustained, the first law must fall. It provides that a special term of court may be held at the time and place mentioned in the petition of one hundred legal voters and taxpayers. The other act, that the court shall be held at the county seat of the county, upon the petition of three fourths of the electors of the county. One law authorizes the petitioners to fix the place; the other requires the court to be held at a place designated by law. One requires but one hundred petitioners of the district; the other, three fourths of the citizens of the county. One law makes no provisions for paying the expenses of holding the court; the other requires the county court to provide for paying such expenses. The first act was passed when the population of at least one district was exceedingly sparse, and the accommodations probably at county seats hardly suited for holding court, and hence a less number of petitioners was required, and they had the right to select the place. But the county becoming better settled, and county towns increasing in size and wealth, the reason for the law having ceased, the law of 1859 was passed to supersede and take the place of the old law, and we have no doubt it was the intention of the legislature to repeal the law of 1855, by the subsequent one which embraces the same subject-matter, and provides for the courts to be held at county seats. The court then erred in overruling the plea to its jurisdiction, which presented the question as to the right of the court to hold a special term at a place other than the county seat.

But the more grave and important question is, Could the legislature delegate to the citizen the right which the organic act has conferred upon it as the law-making power?

The act of congress of September 9, 1850, commonly known as the organic act, brought the territory into existence, and conferred upon the people when assembled in legislative capacity, conjointly with the governor, [authority] to make laws. All legislation must be in conformity with the act. It is from this the right to make laws is derived. And by its provisions the legislature must be governed. It can not exceed the powers given, and ought not to fall short of the requirements it contains. It is enacted that the territory shall be divided into three judicial districts, and a district court shall be held in each of said districts by one of the justices of the supreme court, at such time and place as may be prescribed by law: Sec. 9. The term "prescribed by law" means by law passed by the territorial legislature.

This construction is apparent without the aid of the sixteenth section; but as if to prevent any doubt on this subject, it is there further provided, after giving the governor the temporary right until otherwise provided by law to define the judicial districts and assign the judges to the same, that the legislature at their first or any subsequent session may organize, alter, or modify such judicial districts, and assign the judges and alter the times and places of holding court. The legislature is designated by congress to fix the time and place. This power is intrusted nowhere else, and it belongs to it exclusively, without the right of delegation. The power thus granted can not be conferred [delegated]. Congress has provided what the legislature may do—"fix the time and place for holding court"—and the legislature have no right to say the citizen may fix the time and place, thereby authorizing him to perform legislative functions, and to do what the legislature alone is authorized to do. But the time and place must be prescribed by law. How are they prescribed by law if done by a petition of one hundred citizens? We are unable to discover what analogy this bears either to the form or ingredients of law. The petition certainly is not law, the time and place fixed in the petition are destitute of the appearance of law. It is a well-settled principle, recognized and adopted by the highest courts of the country, that the legislature can not delegate its powers, or even provide for a law to take effect by a vote of the people.

If such are the adjudications—if the most solemn legislative enactment can not become operative when left to and receiving the sanction of the people—depending upon this contingency—the source of all power in a republican government —with how much more force of logic can it be said that when the legislature alone is authorized to fix the time and place of holding court by law, that it can not enact that such time and place may be fixed by the citizen.

If the legislature can clothe one hundred citizens with this power, it follows, as a legal and logical deduction, it can select a single individual and clothe him with the same power, and the strange spectacle would be presented of courts, officers, and suitors becoming subject to the caprice of one man. This is the result if the right to delegate is conceded. We deny such right, and declare the act of 1855, under which the court was held when it rendered judgment in this cause in conflict with the organic act, void.

Thus far we have not referred to the supplemental act of congress passed in 1856 and 1858, as the court below was not held by the authority of either of them.

The act of 1856 provides for the judges of the supreme court to fix the time and place in each of the districts for holding court, which, when taken in connection with the organic act and the subsequent act of 1858, we hold to confer authority only for holding federal courts for the districts.

The act of 1858 authorized the judges to hold courts within their respective districts, wherein, by the laws of the territories, courts have been or may be established, for the purpose of hearing and determining cases other than those arising under the laws of the United States, and provides that the United States shall in no manner be chargeable with the expenses thereof.

This law was passed to provide for holding courts in counties, confining such courts entirely to the trial and determination of cases arising under the territorial laws. But it will be observed that such courts must be established by territorial laws.

There is nothing in this law in derogation of that clause in the organic act which requires the time and place to be prescribed by law, but rather in affirmation of that provision.

Neither of these acts of congress can be cited in support of the judgment. As appears from the record, the court was sitting as a territorial and not as a federal court, was holding a special and not a general term, and hence it could not have been in session under the act of congress of 1856. It could not have been held by virtue of any power conferred by the act of congress of 1858, because the act only authorizes courts to be held in the counties wherein, by the laws of the territory, courts have been or may be established, and no law of the territory was ever passed until the session of the legislature just closed allowing or establishing a court at Carson City in Carson county.

We are therefore of the opinion that the court had no right to proceed with the trial and render a decree after objection was interposed to its jurisdiction.

The decree of the court below is reversed and set aside, and a trial *de novo* awarded.

CROSBY, J., concurred.