## RAILROAD TAX CASES.

### (Circuit Court, E. D. Arkansas, W. D.   April 1, 1905.)

1. STATES—ATTORNEY GENERAL—POWERS.

Under Const. Ark. art. 6, § 22, providing that the Attorney General shall perform such duties as may be prescribed by law, he has no powers except such as are given by the statutes of the state.

[Ed. Note.—For cases in point, see vol. 5, Cent. Dig. Attorney General, §§ 5–7.]

2. SAME—TAXATION—ASSESSMENTS—APPEARANCE FOR STATE.

Kirby's Dig. art. 6, c. 62, defining the duties of the Attorney General, provides that he shall have authority to represent the state, in any court other than the Supreme Court, only in quo warranto proceedings and actions to prosecute suits against officers indebted to the state for moneys collected and unaccounted for. By other special acts he is also authorized to appear for the state in actions to recover back taxes and in antitrust cases, etc.; and section 7182 declares that, whenever a cause is brought against a county assessor for the collection of public revenues, he shall be allowed reasonable fees of counsel, etc. *Held*, in a suit against the State Board of Railroad Commissioners to restrain the collection of taxes on assessments made by them, the Attorney General had no power to intervene on behalf of the state.

3. TAXATION—RAILROADS—RAILROAD COMMISSIONERS—ASSESSMENTS—POWERS.

Kirby's Dig. § 6954, provides that the Board of Railroad Commissioners authorized to assess railroad property for taxes shall hold their annual meetings on the first Monday in June in each year, and also declares that the Governor shall have the right to convene the board in special session at any time. *Held*, that the making of an assessment by such board at its meeting in June did not exhaust its power, but that the board was a continuous body, and therefore, after having made an assessment, it had the power to modify the same for the purpose of compromising litigation.

4. SAME—REVIEW.

The propriety of a modification of a railroad tax assessment by the Arkansas State Board of Railroad Commissioners for the purpose of compromising litigation, in the absence of fraud or other misconduct, is conclusive on the courts.

S. B. Johnson, Oscar Miles, E. B. Peirce, Rose, Hemingway & Rose, and Bridges & Woolridge, for railroad companies.

James P. Clarke, for state railroad commissioners.

R. L. Rogers, Atty. Gen., for the State.

TRIEBER, District Judge.   In 1903, and again in 1904, a number of the railroad corporations of this state filed their bills in this court to restrain the Board of State Railroad Commissioners, which, under the laws of the state, is composed of the Governor, Secretary of State, and Auditor of State, from certifying the assessments made by them in those years against the property of the complainants.   Separate bills were filed by each of the railroads in each year, but, as the allegations upon which the relief is sought in each case for each year are practically the same, the disposition of one of the cases of each year will dispose of all of them.

The relief in the bills filed in 1903 was sought upon the following grounds:

It was charged by the railroad companies that the attempted assessments were illegal and void for the following reasons:

First. Because the board proceeded to make the assessments without having been sworn as required by the statutes of the state.

Second. That the board proceeded to make the assessments without examining the lists and schedules of the description and value of the railroad property, as required by law, but made the assessments arbitrarily and in willful disregard of the rights of the companies.

Third. That the railroad companies were denied a hearing before the board in relation to the assessments of their property, in utter disregard of the rights guarantied to them by the Constitution and laws of the United States and state of Arkansas.

Fourth. That the meeting of the board at which the assessments were made on all the railroad and bridge companies of the state, to the number of 58, lasted only a half an hour, and the assessments were made upon resolutions introduced by two of the members, which read as follows:

"Resolved, that the Board of Railroad Assessment of Arkansas, after consideration of the former assessments of the railroad property operated in this state, has reached the conclusion that the present prosperous condition of the country, which has enhanced the value of railroad property, will justify a reasonable rise of the assessment of all leading lines of railway, and to this end the following valuation is fixed upon the mileage of the railroads enumerated in the list hereto attached, and the Secretary of State is ordered and directed to certify out to the various counties of the state the proportionate assessment based upon the figures here given."

To which resolution was attached a list of 58 railroad and bridge companies, opposite each of which was indicated its alleged former assessment and the assessment proposed by said resolution. By the proposed resolution the valuation was raised about $33\frac{1}{3}$ per cent. above what it had been assessed the year before.

Immediately after that resolution was introduced, another member of the board introduced the following resolution:

"Be it resolved by the Board of Railroad Assessment, that inasmuch as [naming several roads] have become trunk lines, and their earnings have greatly increased in value, and believing that these properties in justice should be raised to a level equal to the present assessment of the Iron Mountain Railroad, I therefore move that the assessment of said roads be raised, and that a general increase of assessment for taxation on all the roads, express, telegraph and sleeping car companies in this state be raised to a general level twenty per cent. above their past assessments. In my opinion, this is but just, in view of the present great prosperity of these roads, and right, and should be done. That the Secretary of State is hereby directed to certify to the clerks in the different counties through which these roads run the assessments as above made."

The last resolution was adopted, and assessments made on the roads in conformity therewith.

Fifth. That these assessments were very much in excess of the assessments made on other property in the state, although the Constitution of the state of Arkansas provides that all property subject to taxation shall be taxed according to its value, that value to be ascertained in such manner as the General Assembly shall direct; making the same equal and uniform throughout the state.

It is further alleged that the uniform rule throughout the state is to assess property, for the purpose of taxation, at about 40 per cent. of its real value, but that the valuation placed upon the property of the railroads by said board was practically its full value, and therefore much higher than other property in the state is assessed.

An injunction was prayed to restrain the board from certifying the assessments thus made by it to the clerks of the various counties through which the railroads run.

In the bills filed in 1904 the material allegations are that the board, at its meeting, assessed the railroad property at a much higher valuation than it had been assessed before; that it was made arbitrarily and in willful disregard of their rights, and for the fraudulent purpose of increasing the assessment, without reference to the value of its property for the purpose of taxation. It was charged that the property was assessed at more than its actual cash value, although other property in the state is uniformly assessed at the rate of 40 to 50 per cent. of its actual value; that the board, in arriving at the value of the railroads, undertook to value the entire railroad mileage of the roads, a very large part of which, and the most valuable part of it, is in other states, the roads being engaged in interstate transportation; that the board considered all the bonds and stocks of the entire railroad system, and apportioned it according to the mileage in this state as compared with the entire mileage of the system, regardless of the fact that a very large part of the property of the corporations was in other states, and was much more valuable than the part situated in this state, and that a very large part of the property of the railroad companies which was held in other states consisted of bonds and stocks of other railroads, which had been duly taxed by the proper authorities of the states where it was situated. They therefore prayed for injunctions as in the bills filed in 1903.

In the bills for both years the companies offered to pay taxes on a legal assessment, according to the values which controlled the assessment of all other property in the state.

The court granted temporary injunctions to restrain the defendants from certifying the assessments made by them in the years 1903 and 1904, respectively, but upon condition that the railroads pay the taxes on the assessments made by the board in 1902, which they admitted to be fair, and permitted the board to certify to the clerks of the various counties in which the property is situated the assessments made for the year 1902 as the basis upon which the roads should pay taxes until the final determination of these proceedings.

The cases have been pending in this court ever since, and now the Board of Railroad Commissioners have come into court, showing that at a meeting held by the board in pursuance of a call made by the Governor on the 29th day of March, 1905, for the purpose of compromising these suits, they made new assessments for the years 1903 and 1904 of the railroad property of the companies in this state, whereby a reasonable deduction was made, and the property assessed at certain sums, set out in the certified copy of their proceedings, and asking that the same be made a part of the record of the cases pending in this court: that the action of the board be approved by the court, and, with the con-

sent of the railroad companies, the complainants in the several actions, decrees be entered permitting the Secretary of State to certify to the clerks of the counties in which the property is situated these new assessments. The railroad companies appeared in court and consented that such decrees may be entered, and further agreed to pay the taxes on these new assessments, less the amounts paid by them on the assessments certified to the clerks of the counties under the terms of the orders of injunction granted in 1903 and 1904.

The Attorney General of the state asks leave to file an intervention on behalf of the state of Arkansas, and that the state be made a party defendant; protesting against any consent decrees or any action by the court permitting the assessments made by the board on the 29th day of March, 1905, to be considered. In his petition he charges that the board has no such power; that, when it made its assessments in the years 1903 and 1904, it exhausted its powers, and that thereafter it had no control or authority whatever over the matter; that the members of the board are only nominally defendants, but that the state is the real party in interest, and the only party concerned or to be affected by the result of this litigation. He further alleges that the assessments made during the years 1903 and 1904 are proper assessments, and were neither too high, nor in any manner illegal, but that, if they were too high, or if any injustice has been done to the railroad companies by reason of any unlawful acts of the board at that time, the court could determine it by its final decree at the hearing, but that no other body or board has any power to make any changes in the former assessments; and for this reason he objects, on behalf of the state, to any decree, except upon the evidence which may be taken by the parties to the action, and the state in its own behalf. Objections are made to the filing of this intervention on behalf of the complainants, as well as the Board of Railroad Commissioners, the defendants herein.

The Constitution of the state provides that the Attorney General shall perform such duties as may be prescribed by law. Article 6, § 22, Const. Ark. We must therefore turn to the statutes of the state to ascertain what duties the Legislature has seen proper to impose on that officer. Chapter 62, art. 6, of Kirby's Digest, defines his duties; and a careful reading will show that the only authority he possesses to represent the state in any court other than the Supreme Court is in quo warranto proceedings and actions to prosecute suits against officers indebted to the state by reason of moneys collected and not accounted for. By special acts he is also authorized to appear for the state in actions to recover back taxes, in anti-trust cases, and some others; but counsel has failed to call our attention to any statute, nor has the court been able to find any, making it the duty of the Attorney General, or authorizing him, to appear in trial courts on behalf of the officers of the state in proceedings of this nature. In the absence of a statute authorizing him to act or appear for the state, the Attorney General is powerless to do so. A., T. & S. F. R. R. v. People, 5 Colo. 63.

Section 7182 of Kirby's Digest provides:

"Whenever a cause has been or may hereafter be brought against any person holding the office of county collector, county assessor or clerk of the county court for performing or attempting to perform any duty or thing authorized

by any of the provisions of this act, or the laws of this state, for the collection of the public revenues, such collector, assessor or clerk shall be allowed and paid out of the county treasury reasonable fees of counsel and other expenses for defending such action or suit, and the amount of any damages or costs adjudged against him."

As the state board, in assessing railroad property, is in fact acting as the county assessor for every county in which railroad property is situated, there is no reason to doubt but that the provisions of this statute apply to it, and authorize it to employ special counsel without calling on the Attorney General for his services.

The Supreme Court of Indiana, in C., C., C. & St. L. R. Co. v. Backus, 133 Ind. 513, 33 N. E. 421, 18 L. R. A. 729, held that a statute conferring upon a state board the power to assess certain kinds of property —all other property being assessed by county officers—clothed the state board with all the powers of the county boards of assessors.

There being no statute authorizing the Attorney General to appear for the state in a trial court unless expressly requested to do so, and there being no statute authorizing him to enter the appearance of the state for the purpose of having it made a party defendant to an action pending, by what authority can he do so? The Constitution of the state expressly prohibits the state from ever being made a party defendant in any of her courts (article 5, § 19, Const.), and the eleventh amendment to the Constitution of the United States prohibits those courts from assuming jurisdiction of any action against the state. It may be that the state may waive this privilege so far as the courts of the United States are concerned, but it certainly cannot permit itself, in the face of the constitutional provision hereinbefore cited, to be sued as a defendant in its own courts.

But even if it be conceded that when there is a fund in court, or property in the custody of the court, to which the state claims title, it may for that purpose make itself a party to the action, as was done in Clark v. Barnard, 108 U. S. 436, 2 Sup. Ct. 878, 27 L. Ed. 780, still, before the Attorney General can take such a step, he must first be authorized by a statute of the state to do so; and, in the absence of such a statute, neither the Attorney General, nor any other state officer, can waive that privilege—one of the highest appertaining to a sovereign state. This was expressly decided by the Supreme Court of the United States in Stanley v. Schwalby, 162 U. S. 255–270, 16 Sup. Ct. 754, 40 L. Ed. 960, where it was held that to make the United States a party defendant in any court is in excess of any power vested by law in the Attorney General of the United States.

A case very much in point was decided by the Supreme Court of South Carolina, in Ex parte Dunn, 8 S. C. 207. In that case the Comptroller General of the state instituted an action to sequester the Savannah & Charleston Railroad to enforce a lien claimed by the state of South Carolina for bonds loaned to the railroad company, the interest of which was to be paid by the railroad company, but which it failed to do. Among other defenses, the defendants pleaded in bar that, in a former foreclosure proceeding against the same railroad company, the state, by its Attorney General, had made itself a party defendant to that suit, and submitted itself to the jurisdiction of the court; and

for this reason it was claimed it was bound by all the proceedings therein, and more especially the decree of the court. But the court, in overruling this plea, said:

"Unless the Constitution of a state recognizes its liability to suit in its own courts, it is protected by reason of its sovereign capacity from process issued by judicial authority, except as provided by the Constitution of the United States. The mere consent of an officer of the state, by appearing and answering in its name, cannot bind it by the judgment or decree which may be the result of the suit. The Attorney General, although a law officer of the state, in fact properly belongs to its executive department, and has no more power to control the state by his action in court than the Governor or Comptroller General. Indeed, when a state can be made a party in the Supreme Court of the United States, the process to that end must be served on the Governor. The legislative power, where, in its opinion, the interest of the state demands that it should be protected by a proper representation in a legal proceeding, may authorize any of its officers, or, indeed, any person in its behalf, and bind it by his action."

For these reasons, the petition for leave to intervene and make the state a party defendant must be denied.

This having been disposed of, the court would undoubtedly be justified in permitting the parties to the record to agree to a consent decree; but, in view of the importance to the people of the state of the issues involved in these cases, and the earnest and able argument of the learned Attorney General, made in the very commendable effort to discharge what he deems to be his duty as a public official, we deem it proper to dispose of the other matters submitted to the court by the parties.

It is claimed by the Attorney General that, when the board had made the assessments in 1903 and 1904, its powers as a board were exhausted, and, as a board, it became functus officio; that for this reason the action at the meeting held on March 29, 1905, was without warrant of law, and therefore absolutely void. In view of the fact that the statute provides that the Board of Railroad Commissioners shall hold their annual meetings on the first Monday in June in each year, and further provides that the Governor shall have the right to convene said board in special session at any time (section 6954, Kirby's Dig.), we are inclined to the opinion that making the assessment at the meeting held in June of each year does not exhaust its power, but that it is a continuous body, subject at all times to the call of the Governor for the transaction of such matters as are by law intrusted to it. If they cease to be a board after having made the assessment annually, why the necessity of providing that the Governor shall have the right to convene said board in special meetings at any time? The Legislature must have had some object in view when it enacted that provision. It may happen that the board had failed at its regular meeting to assess some railroad company, or by a mistake omitted a part of the property subject to taxation of one or more of the railroad companies; would not the Governor, under this provision of the law, have the power to reconvene the board in special meeting for the purpose of making such assessment? Or if it should appear that a great injustice had been done to some of the railroad companies, could not the board rectify it? Or supposing the assessment had been too low, or it was discovered that there was other prop-

erty belonging to a railroad company which should have been assessed, but by an oversight was omitted, would the board be powerless to correct that? Or if, upon final hearing, this court should dissolve the temporary injunctions granted in these cases, or if it should hold that the assessments were violative of some rights guarantied to these companies by the Constitution of the United States or the state of Arkansas, and for that reason the assessments should be reduced to a lower figure, would not the board be compelled to reconvene in special session, upon call of the Governor, for the purpose of certifying the assessments to the county clerks of the various counties, in order that they may be placed on the taxbooks, and the taxes thereon collected? Unless they possess this power, who could make the assessments? Certainly not the court.

In the case of Hubbard v. Garfield, 102 Mass. 75, the facts were these: The board of assessors for a given year struck off certain articles of property, and several years thereafter the board, composed of different individual members, restored these articles of property to the tax list. The contention was made that the board had exhausted its power during the year for which the property was listed originally, and that another board, composed of different members, had no power to reconvene and change that action. The court said:

"The intention of the law is to be judged of with reference to the nature of the proceedings which it affects, and the character given to them by previous legislation; and, with the aid thus derived, it is apparent that the assessors may add new names to the collector's list, as at least one legal mode of making the reassessment. The mode would be less open to objection when the addition is made during the year by the same assessors, and before the expiration of the collector's term of office. But the assessors constitute a tribunal with powers which imply a continued and uninterrupted existence, not limited to the individuals who at any given time compose it. And if this were otherwise, the law in question expressly gives the power of reassessment to the assessors for the time being. By these steps we arrive at the conclusion that the assessment made to the plaintiff was within the jurisdiction of the assessors of 1867, and that the warrant for its collection in the defendant's hands was regular on its face. If it be said that this construction gives to this class of town officers great power over the person and property of the citizen, the answer is that it is no more than must necessarily be had for the discharge of the important and difficult duties connected with taxation, and no more than has been exercised from the earliest times under existing laws. The security is to be found in the integrity of these officers, and not in a too strict construction of the statutes under which they act."

The same question was before the court in Lemly v. Commissioners, 85 N. C. 379, and the same conclusion reached.

Counsel for the board, in their petition, call upon the court for approval of the action of the board in making this compromise, but the court does not feel that it possesses such power. The lawmaking power of the state has seen proper to invest this board with the exclusive authority to assess the railroad property in the state. Every member of the board is elected by the people, and is responsible to them for the discharge of his duties. The grave questions involved in these suits, some of which have never been passed upon by any court of last resort, while as to others there is a great conflict between the various courts of last resort, no doubt make these actions proper ones for compromise. The fact that the members of the board are more familiar with the real

value of the property than any court can be, with no evidence before it, enables them to act intelligently on this subject; and as their actions in the premises have not been impugned by any one—there being no charge of fraud or other misconduct—we feel that the action of the board is conclusive on the courts, and for this reason we do not feel authorized to express any opinion as to the wisdom of the board's action. The presumption in which courts indulge is that every sworn officer will discharge his duty in conformity with his oath of office.

We are therefore of the opinion that decrees by consent of all the parties to the record in these cases, based upon the action of the board had on the 29th day of March, 1905, should be granted.

Similar case pending in the chancery court of Pulaski county, state of Arkansas, Hon. Jesse C. Hart, the chancellor of that court, sat with the District Judge; all cases pending in the two courts being heard at the same time. The conclusions reached in the foregoing opinion, as well as the reasons therefor, met the approval of the chancellor, and the opinion was by him adopted as the opinion of the chancery court.