[Civil No. 4118. Filed May 29, 1939.]

[90 Pac. (2d) 998.]

G. W. SHUTE, Petitioner, v. ANA FROHMILLER, as State Auditor of the State of Arizona, Respondent.

Mr. Chas. Woolf, for Petitioner.

Mr. Joe Conway, Attorney General, and Mr. W. E. Polley, his Assistant, for Respondent.

McALISTER, J.—This is an original proceeding in *mandamus* by G. W. Shute against Ana Frohmiller as state auditor, to compel her to audit and allow his verified claims for salary as attorney for the Colorado River Commission for the period from March 9, 1939, to April 15, 1939.

The petition is based on the provisions of chapter 46, Session Laws of the Fourteenth Legislature of the State of Arizona, and certain action taken pursuant thereto. That act creates the Colorado River Commission consisting of three members to be appointed by the Governor, with the advice and consent of the senate, and confers upon it certain powers and duties relative to the rights of the state in the Colorado River and its tributaries in Arizona. Among these is the

power to represent the state in civil and legal matters relating to the river; to claim rights therein for the state, by and with the approval of the Governor, and to enforce and defend such rights in the courts; to enforce existing rights and claims of the state therein; and to make application for dam sites thereon and perfect its rights thereto. Fifty thousand dollars is appropriated by the act to carry out its purposes and section 3, reading as follows, is incorporated in it, to enable the commission to employ the help necessary to perform its duties:

*"Employees.* The commission shall have power, with the approval of the governor, to employ such engineers, clerks, and other employees as it may deem necessary including, notwithstanding the provisions of section 52a, Revised Code of 1928, such legal counsel as may be required to protect the rights of the state, and to fix their compensation.*"*

It appears from the petition that Alma M. Davis, Hugo B. Farmer and Donald C. Scott, who had been shortly theretofore appointed by the Governor and confirmed by the senate as members of the commission, met on March 9, 1939, organized by selecting Governor Jones as chairman and Alma M. Davis as secretary, and that at the same meeting Alma M. Davis was authorized as secretary to approve claims payable from the funds appropriated for the use of the commission.

On the same day, March the ninth, the commission, pursuant to the provisions of section 3 quoted above, and with the approval of the Governor, appointed the petitioner, G. W. Shute, as its legal counsel, and on the 1st day of April thereafter fixed his salary at $416.66 per month, beginning March 9, 1939. Since that date petitioner has been the duly appointed, qualified and acting attorney for the commission.

On the 3d day of April, 1939, the petitioner filed with the state auditor his verified claim for the sum

of $309.12, covering his salary as attorney for the commission from March 9, 1939, to March 31, 1939, and on the 10th of April, 1939, his verified claim for $208.33, salary from April 1st to April 15th. Both claims had been approved by Alma M. Davis as secretary of the commission, but the respondent then refused and still refuses to audit and allow said claims and draw and deliver to petitioner her warrants on the state treasurer.

In her return the respondent admits that she has refused at all times to audit and allow the claims of the petitioner but alleges that there is no duty imposed on her to do this, because section 3 of chapter 46 is unconstitutional and void in so far as it authorizes the commission to employ special counsel, for the reason that it is the duty of the Attorney General to furnish whatever legal assistance the commission may need.

This allegation in the return raises the only issue in the case, namely, whether that portion of chapter 46, empowering the Colorado River Commission to employ its own counsel, violates the Constitution in that it deprives the Attorney General of the power to make this appointment. The Attorney General, as counsel for respondent, frames the question at issue in this language:

"Did the framers of the constitution, by creating the attorney general as a constitutional officer—without enumerating his duties, but ingrafting upon him all the powers and duties of the attorney general as the same *was* known in common law—restrict the legislature from stripping that officer of the powers and duties of the attorney general as the same *was* known in common law?"

In this query counsel for the respondent assumes that because the framers of the Constitution created the office of Attorney General without enumerating the duties going with it, they thereby engrafted upon

that officer all the powers and duties the Attorney General had under the common law, and that the effect of this was to restrict and prohibit the legislature from depriving him of these powers and duties. Obviously, the correctness of this viewpoint must depend upon the meaning of the expression, "as may be provided by law," and "shall be as prescribed by law," which appear in the following sections of article 5 of the state Constitution:

"Section 1. The Executive Department of the State shall consist of Governor, Secretary of State, State Auditor, State Treasurer, Attorney-General, and Superintendent of Public Instruction.

. . . . . . . . . . . . . . .

"The officers of the Executive Department during their terms of office shall reside at the seat of government, where they shall keep their offices and the public records, books, and papers. They shall perform such duties as are prescribed by this Constitution and as may be provided by law.

. . . . . . . . . . . . . . .

"Section 9. The powers and duties of Secretary of State, State Treasurer, State Auditor, Attorney-General, and Superintendent of Public Instruction shall be as prescribed by law."

■■ If the Constitution had created the office of Attorney General without referring to its powers and duties, it might be true under the authorities that the term, "attorney general," had been used in its common-law acceptation, since Arizona is a state in which the common law prevails. A statement to this effect appears in *State* v. *Huston*, 21 Okl. 782, 97 Pac. 982, 992, wherein the court in a rather exhaustive opinion on rehearing said:

"The correct rule appears to be that, where the office of Attorney General is created in states where the common law prevails, without any reference to the duties of such office, the word is used with its accepted meaning under the common law, and carries

with it such duties and powers as were usually incident to the office of Attorney General in England under the common law, when not locally inapplicable."

But when the Constitution provides in the same article in which it creates the office of Attorney General that that officer "shall perform such duties as are prescribed by this Constitution and as may be provided by law" and that his powers and duties "shall be as prescribed by law," it cannot be said that the Constitution is silent as to his duties and powers. It is true that it does not itself enumerate them but in stating that they shall be "as prescribed by law" it refers to them and clearly makes it the duty of the legislature to say what they shall be. The expressions, "as provided by law," and "as prescribed by law," are, as we see it, susceptible of no other construction. The word "law" in both expressions means statute. *Fountain* v. *State,* 149 Ga. 519, 101 S. E. 294; *Exline* v. *Smith,* 5 Cal. 112; *Lawson* v. *Kanawha County Court,* 80 W. Va. 612, 92 S. E. 786; *Winters* v. *Hughes,* 3 Utah, 443, 24 Pac. 759; *In re Campbell,* 138 Mich. 597, 101 N. W. 826; *People* v. *Santa Clara Lumber Co.,* 55 Misc. 507, 106 N. Y. Supp. 624. From this it follows necessarily, as most courts hold, that under Constitutions containing provisions similar to those in Arizona, the Attorney General is not a common-law officer, one upon whom "the duties and powers of the attorney general as the same *was* known in common law" have been engrafted but is one whose powers and duties may be ascertained only by resort to the statutes. In Wisconsin the office of Attorney General is created by the Constitution (art. 6, § 3) which provides that its powers and duties are such as "shall be prescribed by law," and in *State* v. *Snyder Industrial Com.,* 172 Wis. 415, 179 N. W. 579, 580, the court said:

"In this state the Attorney General has no common-law powers or duties. His duties spring from the statute, . . . "

In Washington the Constitution, article 3, section 21, provides that

"The attorney general shall be the legal adviser of the state officers, and shall perform such other duties as may be prescribed by law."

In *State* v. *Seattle Gas & Elec. Co.,* 28 Wash. 488, 68 Pac. 946, 949, 70 Pac. 114, the court said:

"In the exercise of power the officer is controlled by the law theretofore declared. The attorney general of the state, although bearing the same title as the attorney general of England, is not a common-law officer. There is nothing in a mere name. Because the particular office filled by the relator is called the office of 'attorney general,' it does not follow therefrom that he has the same powers as the attorney general of England under the the common law. . . . The constitution and statutes of this state define his power. To the constitution, therefore, and the laws enacted in pursuance thereof, we must look for these powers, and not to the common law."

In Oklahoma the Constitution says that the Attorney General "shall perform such duties as may be designated in this Constitution or prescribed by law," Okl. Stats. Ann., Const., art. 6, § 1, and in *State* v. *Huston, supra,* the court said:

"Now it is clear that, as the Constitution nowhere designated the duties of the Attorney General, we must look elsewhere to see where they are prescribed by law."

And it held that the Attorney General in that state had no common-law powers in addition to those imposed upon him by statute.

The Constitution of Arkansas, article 6, section 22, is that the Attorney General "shall perform such du-

ties as may be prescribed by law," and in *Railroad Tax Cases*, (C. C.) 136 Fed. 233, 236, the court said:

"We must therefore turn to the statutes of the state to ascertain what duties the Legislature has seen proper to impose on that officer."

Section 6, article 5 of the New York Constitution of 1846 provided that

"The powers and duties of . . . the several officers in this Article mentioned, shall be such as now are or hereafter may be prescribed by law,"

and in *People* v. *Santa Clara Lumber Co., supra* (55 Misc. 507, 106 N. Y. Supp. 626), the court quoted from one of its former decisions (*Brinckerhoff* v. *Bostwick*, 99 N. Y. 185, 1 N. E. 663) this statement:

" 'Such expressions as "required by law," . . . "as prescribed by law," . . . are of frequent occurrence in the Codes and other legislative enactments; and they are always used as referring to statutory provisions only' "

and then continued with this language:

"If this be accepted as a correct definition of the meaning of the words in section 6, 'prescribed by law,' then the meaning is the same as if it read *'prescribed by some statute of this state.'* If, however, the expression 'prescribed by law' covers both the statute and common law, it is still true that, if the Legislature may change a provision of the statute defining the powers and duties of the Attorney General, it may also change a rule of the common law prescribing those powers and duties. . . . There is no provision in the Constitution which apparently is *intended to limit the powers of the Legislative branch of the government in this respect.*" (Italics ours.)

Notwithstanding the expression "prescribed by law," and the construction placed on it by most of the courts, counsel for respondent contends that the legislature was without power to authorize the Colorado

River Commission to employ special legal counsel for the reason that in providing for the election of the Attorney General, the framers of the Constitution by that act reserved unto the people the right to have the well-known functions of that office discharged by a person elected to it and, hence, that

"the naming of this officer in the constitution amounts to an implied restriction upon legislative authority to create other and appointive officers for the discharge of such functions."

In support of this position counsel argues that the intention of the framers of our Constitution, which employs general terms, is to be ascertained not merely from its wording but, to use the language of *State* v. *Sullivan,* 48 Mont. 320, 137 Pac. 392, 394, from

" 'our history, the surrounding circumstances, the subject-matter under consideration, and the object sought to be attained.' . . . Our Constitution uses many terms that it does not define, provides for many offices the duties of which it does not prescribe. 'In judging what it means, we are to keep in mind that it is not the beginning of law for the state, but that it assumes the existence of a well-understood system which is still to remain in force and be administered, but under such limitations and restrictions as that instrument imposes.' "

It is pointed out further by counsel that when our Constitution was adopted in 1912, "the previous history" of Arizona, "the well understood system" it then used included a political setup of more than forty-five years standing, one that was republican in form, constitutional in character, and very much like the scheme of government in all the states, with which we are familiar, and in which the common law then as now, was "the law and rule of decision," except where changed by statute; that the Territory of Arizona had courts, both superior and supreme, a legislature, and executive officers, including Governor, Attorney Gen-

eral, Secretary of State, treasurer and superintendent of public instruction, and that the text of the Constitution itself shows that as to all unexpressed duties and powers of those offices, the framers of that instrument, and the people who adopted it, had in view these offices as they were then commonly known and as carrying with them the attributes and authority which had theretofore been declared by the written and unwritten law and, according to *State* v. *Sullivan, supra,* " 'were shadowed forth and symbolized by their names' ''; that, consequently, the framers of the fundamental law, when they made the Attorney General a constitutional officer, had in mind not only that the Attorney General had been the chief law officer of the territory since its organization in 1863, but that that officer had been brought to this country through the common law from England where for centuries he had been the chief legal representative of the crown in the courts in both criminal and civil matters. 7 C. J. S., Attorney General, p. 1213, § 1. And from this counsel draws the conclusion that, generally speaking, "the common law relations of the attorney general to the sovereign had been preserved in the United States" and supports this view with several citations and the following excerpt from *State* v. *Young,* 54 Mont. 401, 170 Pac. 947, 948:

"It is the general consensus of opinion that in practically every state of this Union whose basis of jurisprudence is the common law, the office of Attorney General, as it existed in England, was adopted as a part of the governmental machinery, and that in the absence of express restrictions, the common-law duties attach themselves to the office so far as they are applicable and in harmony with our system of government."

One of the other cases relied on by him is *Fergus* v. *Russel,* 270 Ill. 304, 110 N. E. 130, 143, Ann. Cas.

1916B 1120, in which the court invalidated a statute making an appropriation for special legal counsel to be appointed by the insurance superintendent to represent the state in insurance litigation to the exclusion of the Attorney General. The Constitution of Illinois, Smith-Hurd Statutes Constitution, article 5, section 1, created the executive department consisting of several officers, among them an Attorney General, and provided that they "shall perform such duties as may be prescribed by law," and the court, after stating that the Constitution confers no express duties on the Attorney General and that that office was one known to the common law under which it had well-defined powers, said:

"The common law is as much a part of the law of this state, where it has not been expressly abrogated by statute, as the statutes, and is included within the meaning of this phrase."

This is the only case to which we have been referred holding definitely that the word, "law," in the expression "prescribed by law," includes the common as well as the statutory law. However, the statement was made by a court in a common-law state, one where that system was the rule of decision, unless expressly abrogated by statute, and in which the distinction between common law and equity procedure was still preserved.

The case upon which counsel for respondent places chief reliance, however, is *Ex parte Corliss,* 16 N. D. 470, 114 N. W. 962, 965. The Constitution of that state, section 83, after enumerating the various executive officers, including Attorney General, provides that the duties of those offices "shall be as prescribed by law," and the court, in holding invalid a statute creating a commissioner to enforce a liquor prohibition statute, stated that the officers mentioned in the Con-

stitution "are imbedded" therein and cannot be stripped by the legislature of the important duties inherently connected therewith; that if this could be done, they were "imbedded in the Constitution" for no purpose, because the legislature could strip them of all their duties if it could any, and lodge them with appointive officers, thus depriving the people of the right to have the duties performed by officers elected by them. This case treats the matter at length and supports the viewpoint of respondent, though the decision was not unanimous, a very exhaustive forceful dissenting opinion having been prepared by one of the court's three members.

Notwithstanding the holding in these cases, we are clearly of the view that the mere naming of the Attorney General in the Constitution of this state does not amount to an implied restriction on the authority of the legislature in prescribing his duties. It is true in this state, as in others, that the office of Attorney General, together with the other executive offices created by the Constitution, is imbedded in that instrument, but it is equally true that the authority of the legislature to prescribe what the duties and powers of those occupying these offices shall be is imbedded there also, and, this being true, no common-law powers or duties can attach to that office but only those prescribed by statute. This statement, we think, completely answers the contention of counsel for respondent that

"the framers of the constitution in providing for the election of the attorney general by the people thereby reserved unto the people the right to have the well known functions of the attorney general discharged only by a person elected attorney general, and that the naming of this officer in the constitution amounts to an implied restriction upon legislative authority to create other and appointive officers for the discharge of such functions."

As just stated, the provision that the Attorney General's powers and duties "shall be as prescribed by law" is as much a part of the Constitution as that portion of it creating the office itself and fully as binding, but it is a useless provision if it be true that the mere naming of the office in that instrument limits the legislature in prescribing the functions the person filling it must perform. Naturally the framers of the Constitution intended when they created the office of Attorney General and made it elective, that its duties would be discharged by the person elected to it, but in view of the fact that they provided also at the same time and in the same instrument that his powers and duties should be "as prescribed by law," meaning by legislative act, the intention was that he would perform the duties assigned him by the legislature. And in saying what these shall be no express restriction is placed on that body's power, and none is implied other than that forbidding the imposition of duties that would interfere with the maintenance and preservation of the independence of the three branches of government. Any act of the legislature imposing upon an executive officer duties properly belonging to one of the other two branches would necessarily be invalid, even if enacted pursuant to the constitutional provision empowering it to prescribe what the functions of that office should be. With this exception the legislature's power to add to or take from these duties from time to time is full and complete under the provision stating that his duties "shall be as prescribed by law," as well as under section 2, article 22 of the Constitution which provides that the laws of the territory of Arizona, and this includes those prescribing the duties of the Attorney General, "shall remain in force as laws of the State of Arizona until they expire by their own limitations or *are altered or repealed by law.*" Clearly, the framers of the Constitution did not intend to author-

ize the legislature to alter or repeal the territorial statutes that prescribed his duties and remained in force as laws of the state and at the same time withhold from it the power to take similar action as to any common-law duties he may have had. *People* v. *Santa Clara Lumber Co., supra.*

It is conceded by counsel that the legislature may give the Attorney General additional powers and duties but he insists that these ''must be planned and built'' on the same lines as those he had throughout Arizona's life as a territory and which were carried over by the Constitution as a part of his duties as an officer of the state. If the legislature is not so restricted, he argues, it may take all his powers and duties away from him and, in effect, abolish his office. The legislature is given no authority whatever over the existence of any office created by the Constitution and the probability that it would, in the exercise of its authority to prescribe powers and duties, go so far as to take all these from any officer and give them to another was so unlikely and remote that no limitation in this respect was placed upon it. It was the changing conditions through which the new growing state would be sure to go that led the framers of the Constitution to think it necessary that the authority to prescribe the duties and powers of its various executive officers, except in those few instances in which the Constitution itself names a part of them, should be lodged somewhere in order that the laws of the state should not be so fixed and inelastic as to defeat the state's best interest by prohibiting change when needed and, naturally, the body in which such authority should rest was the legislature. The members of the constitutional convention realized that the legislature would understand, generally speaking, what the functions of an executive officer are and that in pre-

scribing his duties it would, as reasonable men, keep this in mind and depart from it only when and to the extent its judgment should suggest the best interests of the state demanded it. It knew full well that the legislature would not attempt, for instance, to transfer the duties of the Secretary of State to the superintendent of public instruction or to impose those of the state treasurer on the Attorney General, but that if it were convinced that some of the duties of any of the executive officers could be better carried out by one officer than another, or by some new officer, authority to make the change, without the necessity of adopting a new Constitution, should exist. Hence, the reason for granting the legislature all inclusive authority to prescribe the duties and powers of an executive officer.

We are clearly of the view that in authorizing the Colorado River Commission to employ the petitioner as its legal adviser the legislature acted within its constitutional power. The alternative writ is made peremptory.

ROSS, C. J., and LOCKWOOD, J., concur.