## DEUTSCHE PRESBYTERISCHE KIRCHE

*v.*

## TRUSTEES OF PRESBYTERY OF ELIZABETH et. al.

[Decided August 22d, 1918.]

1. Where one trustee transfers to another, without getting an equivalent, property that he holds in trust, the transferee will ordinarily take, charged with the same trust.

2. Where it is apparent from the different resolutions passed by the corporate bodies, who were parties to the transaction inquired about, that the transaction was not an out and out gift, and that the mutual purpose of the parties was to take further action defining the trust. a proposed sale of the property transferred to an outsider will be enjoined at the instance of the *cestui que trust.*

3. Managers of a corporation cannot give away its property.

On bill, &c.

*Mr. Charles J. Stamler,* for the complainant.

*Mr. Nicholas C. J. English,* for the trustees.

*Mr. Orlando H. Dey,* for the Greek church.

STEVENS, V. C.

This is a controversy over the equitable ownership of a church property in Rahway. Prior to May 15th, 1909, the title was vested in complainant. On that day, by warranty deed, it, by certain of its trustees, conveyed, or attempted to convey, it to the trustees of the Presbytery of Elizabeth. The church now claims that it still has an equitable interest. The trustees of the Presbytery contend that they are the absolute owners. As such they have agreed to sell to St. John's Greek Catholic Church of Rahway, one of the defendants. The bill is filed, primarily, to enjoin them from so doing.

The church was organized as a Presbyterian congregation on April 10th, 1884, under the Religious Corporations act. A year thereafter it acquired the property in controversy from the Rahway Savings Institution for the consideration of $2,400. It gave back a mortgage to secure $1,000 of the purchase-money. The membership was small from the beginning, and as time went on it diminished. Between 1885 and 1909 it had paid only $200 on its mortgage indebtedness. On January 19th, 1909, as appears from the minutes of the Elizabeth Presbytery, the following resolution was passed by that body:

"*Resolved,* That the matter be referred to the standing committee of the board of church erection and the trustees of Presbytery, and to give the trustees of Presbytery power to negotiate a loan of $800 during the interval of Presbytery, if such a course should be found necessary."

These boards, after consideration, reported to the Presbytery, which thereupon adopted the following resolutions:

"1. That Presbytery hereby approves the action of its committee * * * in proposing to the German Presbyterian church of Rahway to transfer its property by deed to the trustees of Presbytery, *in return for the assumption* by the trustees of Presbytery of the mortgage of $800 now lying against the property.

"2. That Presbytery hereby authorizes the trustees of Presbytery to accept title to the German Presbyterian church, provided it be offered, upon the terms above named, to enter into such agreement with the said congregation as will secure the German Presbyterian church of Rahway *the free use of the property as long as it exists in connection with the Presbytery,* and to do all that may be necessary to complete the transaction both as respects the transference of the title and the replacing of the mortgage."

By this resolution certain members of the Presbytery (including the Rev. Dr. Kerr) were appointed to represent Presbytery at the congregational meeting of the German Presbyterian church, to be held on the next Monday evening.

This meeting took place and Mr. Helms, one of the members of the congregation, offered the following resolution:

"WHEREAS, The church is encumbered with a mortgage for $800, which has existed for twenty-four years and the congregation seems unable to pay the same, and payment thereof has been demanded;

244          ·CASES IN CHANCERY, 1918.

Deuts. Presb. Kirche *v.* Presb. of Elizabeth.    *89 N. J. Eq.*

"AND WHEREAS, The congregation has with difficulty sustained regular religious services and seems unable to do more under existing conditions;

"AND WHEREAS, The Presbytery of Elizabeth, its members and subordinate committees, to a large extent provided the funds for the acquisition of the church property, and it is desired that the property continue to be devoted to religious uses under direction of the Presbytery and be not lost by foreclosure or otherwise; and the trustees of the Presbytery of Elizabeth have offered to assume said mortgage.

"*Resolved,* That the trustees of this church be directed to convey the church property consisting of a lot fifty feet wide fronting on Irving street, Rahway, and the church edifice thereon to the trustees of the Presbytery of Elizabeth, their successors and assigns;

"*Resolved further,* That the Presbytery of Elizabeth be respectfully requested to still allow us to occupy and use the church for religious services so long as we may be able to sustain stated religious worship therein and to keep the property in proper order and repair;

"*Resolved further,* That the Presbytery of Elizabeth be requested to enter into agreement with the church to return the title to the property whenever the church pays the amount of the mortgage above referred to and that the church has the privilege of paying the amounts in installments of $100 or more."

The minutes show that a· vote was taken by ballot. Ten votes were cast—all in favor of the preambles and resolutions—being (so the minutes state) "more than two-thirds of all the votes cast." The minutes do not show whether other members of the congregation were present.

On May 15th, 1909, the German church made a deed to the trustees of the Presbytery of Elizabeth, in consideration, so the deed states, of "one dollar and other valuable consideration." The deed contains, unreservedly, covenants of seizin, warranty and against encumbrances. It does not declare that the property is conveyed subject to the mortgage. Although the resolution of Presbytery provided that the trustees of the Presbytery should assume payment, it, the grantor, by its covenant against encumbrances, undertook to do so.

The Presbytery furthermore. directed its committee *to enter into an agreement* to secure the free use of the property as long as it (the church) existed in connection with the Presbytery. They made no such agreement and nothing was done about the resolution of the congregation that provided that the Presbytery should be requested to enter into an agreement to return the title whenever the church paid the mortgage.

On May 27th, 1909, the trustees of the Presbytery paid off the mortgage to the savings institution with the proceeds of a $900 mortgage made by them to the Union County Savings Bank of Elizabeth. They paid the interest on this mortgage until 1916, when they received an offer to purchase from a Hebrew church. The German church had held its customary services from the time of the transfer to the time when this offer was made. Hearing of it, it objected to the proposed sale, and Mr. Schneider, one of its members, agreed thereafter to pay the interest on the mortgage and to discharge a municipal assessment, which he did. In consequence of the attitude of the congregation, and, as it is said, the inadequate price, the offer was declined.

In April of the present year an offer of $5,348 was received from the defendant the Greek church, and this offer was accepted by the trustees of Presbytery, and $200 paid on account of the price. This suit was brought before the delivery of a deed or the payment of the balance of the purchase-money.

It was proved that between the years 1885 and 1909 the German church received about $8,400, not from the trustees of the Presbytery, but from the synod, a body having a more extensive jurisdiction. It was made up almost entirely of an annual contribution of $300 to the pastor's salary and was a pure donation. Its payment is without effect upon the present controversy.

Counsel for defendants lay stress upon a line of cases in which it is held that a trust in land will not result to the grantor, if the conveyance purport to be given for a valuable consideration, upon parol proof that nothing was in fact paid and that the conveyance was wholly voluntary. *Aller* v. *Crouter,* 64 *N. J. Eq. 381; Holton* v. *Holton,* 72 *N. J. Eq. 312; Coffey* v. *Sullivan,* 63 *N. J. Eq. 296.* These cases have no application here. The controversy is not one between individuals, each claiming in his own right, but between two corporate trustees, each vested with authority to hold in trust for specific objects. Ordinarily, if a trustee transfer to another, without getting an equivalent, property that he holds in trust, that other will hold on the same trust. In the case in hand, I should say that, *prima facie,* if the grantor-trustee have made a conveyance, without valuable con-

sideration and without specifying any other trust that it was competent for the two bodies to create, the grantee-trustee would take, charged with the same trust. It would lie upon the grantee-trustee to show that in some way or other a different trust was created, and this would not be shown by proof merely that the trusts which it was *capable* of executing covered a wider range of objects. It will not be disputed that the trustees of Presbytery could have agreed to hold the property on the trust upon which the trustees of the church had held. Such agreement would have been within the scope of its power; and so the case comes down to this, What is there to show that it took on a different trust—assuming, of course, that the church trustees had power to authorize such a trust or to make a gift of the property? On this question we are not left without light, for we have the corporate action of the congregation, on the one hand, and of the Presbytery on the other. The Presbytery, as we have seen, took action first. The question before them was whether it was expedient to protect the church from a threatened foreclosure. They resolved that it would be well to propose to the church that it transfer its property "in return for the assumption by the trustees of Presbytery of the mortgage." In this, we have the suggestion of a valuable consideration; but, as has been shown, such consideration was not in fact given. The warranty deed actually taken continued the burden on the church. If the trustees of Presbytery paid off the old mortgage with the proceeds of the new, given by themselves, they could recover what they paid by suing on the covenant against encumbrances. The Presbytery also resolved that the trustees be authorized to accept title to the German Presbyterian church of Rahway; *provided* it be offered, upon the terms above named, to enter into such agreement with the said congregation as would secure the German Presbyterian church of Rahway the free use of the property, *as long as it existed in connection with the Presbytery.*

The body charged with the carrying out of these resolutions was composed of gentlemen of the highest character and not the slightest reflection upon their conduct, viewed from an ethical standpoint, is here intended. But it is evident that their action did not accord with their instructions. They did not, probably

through oversight, assume the mortgage, and they did not, as called for by the second resolution, enter into an agreement to secure to the church the free use of the property as long as it existed in connection with the Presbytery. It is needless to say that had they made such an agreement, they would not have attempted, as they are now doing, to sell.

Let us next look at the action of the Rahway congregation. They were doubtless advised of the action of the Presbytery. The Rev. Dr. Kerr, who was one of its members and one of the members of its trustees, was present at the meeting, and, as he himself states, was the one who, on behalf of the church, drew the resolution requesting the Presbytery to enter into an agreement to return the title to the property "whenever the church pays the amount of the mortgage." If this resolution had been afterwards approved by the Presbytery, the complainant would be, without more, entitled to a return of its property; for it has tendered payment. What I desire here to emphasize is that what the congregation contemplated was not an unqualified gift but a trust terminable on payment of the mortgage.

Whether, therefore, we consider the action of the Presbytery or the action of the church we reach the same conclusion, viz., that an out and out gift was not intended. What was contemplated was the transfer on a somewhat different trust of a property worth then and now upwards of $5,000, to a body which was, from a financial standpoint, better able to take care of it.

The subsequent conduct of the parties accords with their resolutions. The trustees of the Presbytery allowed the congregation to use and control the property as before. When, in 1916, the Hebrew society made its offer to purchase, and the congregation objected, the trustees permitted Mr. Schneider to pay an assessment and to take upon himself the payment of the interest on the mortgage.

It is a well-known rule that the managers of a corporation cannot give away its property. Here it is argued that the congregation—the *cestui que trust*—authorized the gift. If we assume that the authorization, notwithstanding their resolutions, was absolute, still it does not appear that all the members of the congregation—the entire body of *cestuis que trust*—assented. What

is proved is that ten members voted. It is not proved that these were *all* the members.

It seems plain that an injunction should issue restraining the sale to St. John's church.

It is not quite as apparent what other relief should be given. The minds of the parties, so to speak, did not meet to the extent of concluding a definite arrangement. The proposition, on the one hand, was that the church should have the free use of the property as long as it existed in connection with the Presbytery. The proposition, on the other hand, was that the title should be reconveyed when the church paid the mortgage. The language of the clause adopted by the congregation and drawn, as I have said, by Rev. Dr. Kerr, is highly significant. It proves that further action defining the trust was contemplated and that the transfer of the legal title was a step merely toward the ultimate settlement. As the trust agreement has been left undefined, it seems to me that the equity of the church now is to have a reconveyance, on payment of all the money given or advanced by the Presbytery or its trustees since the mortgage was made, including, of course, the money for which the trustees have obligated themselves on their bond.