[Criminal No. 1517.   Filed October 24, 1921.]

[201 Pac. 99.]

## JOHN KING, Appellant, v. STATE, Respondent.

1. CRIMINAL LAW—RIGHT TO DISMISSAL OF PROSECUTION FOR FAILURE TO BRING CASE TO TRIAL WITHIN REQUIRED TIME HELD WAIVED.— Where defendant announced himself ready for trial, and a jury was impaneled and duly sworn, there was a waiver of the right to dismissal of prosecution for failure of the state to bring the case to trial within sixty days after the filing of the information, under Penal Code of 1913, section 1274, subdivision 2.

2. CRIMINAL LAW—ONE MAY WAIVE RIGHT INTENDED FOR OWN BENEFIT.—One may waive a right intended for his own benefit if it can be relinquished without detriment to the community at large.

3. CRIMINAL LAW—RECORD HELD NOT TO PRESENT QUESTION OF MISCONDUCT OF PROSECUTING ATTORNEY.—Where record certified under Penal Code of 1913, section 1130, included motion for new trial, affidavits relating to misconduct of prosecutor and instruction of court relied on to cure misconduct, but the transcript of the reporter's notes did not contain such instruction, the misconduct of prosecutor will not be considered; the affidavits not being part of the record.

4. HOMICIDE—EVIDENCE HELD TO PROVE DEFENDANT ENTERED INTO COMMON DESIGN WITH OTHERS TO KILL DECEASED.—In prosecution for murder, evidence *held* to prove that defendant had entered into a common design with others to kill deceased.

23 Ariz.—4

APPEAL from a judgment of the Superior Court of the County of Cochise. Alfred C. Lockwood, Judge. Affirmed.

Messrs. Hays & Hays, for Appellant.

Mr. W. J. Galbraith, Attorney General, Mr. G. R. Hill, Assistant Attorney General, and Mr. R. N. French, County Attorney, for the State.

FLANIGAN, J.—Under information filed July 10, 1920, appellant was convicted of the crime of murder in the second degree, and was thereupon adjudged to suffer an indeterminate imprisonment of not less than ten years, the maximum sentence to be his natural life. From this judgment, and an order denying his motion for new trial, he appeals.

The defendant was not brought to trial until October 4, 1920. Eighty-five days had therefore elapsed between that time and the filing of the information. Appellant by his counsel announced himself ready for trial, a jury was impaneled, and on October 5, 1920, duly sworn to try the issue. After the jury had been sworn, counsel for defendant moved "the court to dismiss the cause under subdivision 2, paragraph 1274, of the Penal Code," which motion the court denied upon the ground that, the jury having been impaneled and sworn, and the defendant placed in jeopardy, his right to such dismissal was waived.

The relevant part of section 1274 is as follows:

"The court, unless good cause to the contrary is shown, must order the prosecution to be dismissed in the following cases: . . . (2) If a defendant, whose trial has not been postponed upon his application, is not brought to trial within sixty days after the finding of the indictment or the filing of the information."

The record shows that the trial had not been postponed upon defendant's application, and that no

cause was shown by the state for the delay. The refusal of the court to order the prosecution dismissed is the basis of the first assignment of error. We think the ruling of the court was correct. Unquestionably, the section quoted is a construction of our constitutional guaranty that accused persons shall in criminal prosecutions have the right to a speedy trial (section 24, art. 2, Constitution), being in the nature of a legislative definition of the term. *Yule* v. *State,* 16 Ariz. 134, 141 Pac. 570; *Matter of Application of Von Feldstein,* 17 Ariz. 245, 150 Pac. 235.

Appellant contends that the right thus constitutionally secured could not be waived by him. With this we cannot agree. The constitutional provision, as is shown by its origin and history, was designed to secure a benefit personal to the defendant, and—

"it is a recognized principle that every one may waive a right intended for his own benefit, if it can be relinquished without detriment to the community at large." *Reid* v. *Field,* 83 Va. 26, 1 S. E. 395.

That the right was here waived is plain.

*People* v. *Hawkins,* 127 Cal. 372, 59 Pac. 697, is directly in point, and construes the statute of California from which our provisions are taken. We quote from the opinion:

"The legal jeopardy of the defendant has attached when a jury has been 'charged with his deliverance,' and the jury stands thus charged when its members have been impaneled and sworn. Cooley, Const. Lim. (6th ed.), p. 399. When, therefore, the defendant here moved for dismissal, he had been 'brought to trial,' and was upon trial, without previous objection that the limit of 60 days had expired. If he could then raise the objection for the first time, he could raise it as well on the announcement of the verdict, or at any other stage of the trial. We are satisfied that the statute never was designed for such uses, and must hold that defendant waived its benefit (if

he was entitled thereto) by failure to claim it in proper season.''

We hold that the assignment of error is without merit.

The next assignment is that the deputy county attorney in his argument to the jury used the following language:

''The defendant never explained why those blood spots were upon his clothes and his pistol.''

There was testimony by a witness for the state that there were blood spots upon the defendant's clothes and pistol after the killing of Scott. The defendant did not testify although he introduced the testimony of others. The record of the action certified to this court in accordance with the provisions of section 1130, Penal Code, includes the motion for new trial, and an affidavit—apparently a part of this motion—made by the defendant, in which he avers that the deputy county attorney used the language quoted in his opening argument to the jury, and also contains the counter-affidavit of that officer that he had referred to the ''defense'' and not to the ''defendant,'' admitting he was otherwise correctly quoted. It appears also that an instruction was requested to the effect that the jury should not in any manner consider the failure of the defendant to testify, and that such failure must not be referred to by counsel, which instruction was marked ''given'' and signed by the judge. The transcript of the reporter's notes purporting to set forth the instructions actually given, and signed by appellant's counsel as correct, does not contain this or any like instruction to the jury on the matter.

The contention that as the affidavits referred to are a part of the record, we must therefore consider the error assigned, is obviously ill-founded. From this record we merely know that the affidavits were

filed, and that they are in form as set out, which is far from the authenticated showing of fact required. As the matter complained of is not presented in the proper manner, we may not consider the assignment. *Groce* v. *Territory,* 12 Ariz. 1, 94 Pac. 1108.

The next assignment of error challenges the sufficiency of the evidence to prove that the defendant had entered into a common design with others to kill the deceased. There was testimony for the state introduced to prove that in the early morning hours of June 2, 1920, at a resort known as "White City," near the military post, Fort Huachuca, the deceased, a civilian, shot a soldier, one Scott. With the motive, apparently, of revenging the shooting of their comrade, other soldiers immediately pursued the assailant, overtaking him at a point about 200 yards away from the house where the first shooting occurred. After being overtaken, the fugitive was seen to be on his knees, his hands up, with some of the pursuing party (consisting then of four or five men) shooting at him, and others of them throwing sticks and stones at him. The deceased fell, his assailants closed in, and—as it appeared to a witness—beat and punched him about the head. Deceased died very soon afterwards as the immediate result of a gunshot wound, which penetrated his jaw and ranged downward through his neck and lungs, the bullet causing the wound being later taken from under his right arm. He was also shot across the abdomen, and the upper and back part of his head bore two little punctured contused wounds, penetrating the head and fracturing the skull, pushing two little flaps of bone into it.

The defendant, a negro, was a soldier from the fort, and had, it seems, spent the night at "White City," being up and about the resort during the night and the early morning hours.

Very shortly after the wounding of the deceased the defendant and three other soldiers boarded an automobile going to the fort, being picked up by the driver of the car a short distance from where Scott was lying wounded. It was proved that the defendant was armed with a regulation army gun, a Colt's model automatic 45-caliber pistol; that a few hours after the killing this gun showed powder stains in the barrel, and, from this and the odor of burnt powder, had evidently been recently discharged; that the weapon in various parts, including the butt, was splotched with blood, and that there were two little projections on the butt of the weapon which were approximately the same distance from each other, as were the penetrating wounds to the skull. It was further shown that five empty shells picked up a few hours after the homicide about thirty feet from where Scott's body had been lying, were peculiar in the fact that the firing-pin, or plunger, had struck eccentrically a little further in the side of the caps in the cartridges than was ordinary in guns of that make or class, and that on each shell was a characteristic "swell" or bulge, not common to exploded shells from such weapons; that defendant's pistol exploding similar cartridges produced effects on them similar to those exhibited by the shells found at the scene of the killing; and that the bullet taken from the body of the deceased was of the same caliber and kind as those used in defendant's pistol.

This evidence we think was ample to prove that there was a common design of several persons to kill the deceased. That the appellant was a party to that design appears, it is true, by circumstantial evidence only, but it is evidence of a nature, if believed, sufficient to prove that appellant was not only a participant in the homicidal assault, but one of the chief

actors in it. The assignment of error cannot be sustained.

The remaining assignment of error we think to be obviously without merit.

Finding no error affecting the judgment, it must be affirmed.

ROSS, C. J., and McALISTER, J., concur.