[Civil No. 3935.   Filed January 31, 1938.]

[75 Pac. (2d) 696.]

S. W. McCALL, Plaintiff, v. JOHN P. CULL, Defendant.

Mr. Elmer Graham and Mr. W. L. Barnum, for Plaintiff.

Messrs. Sutter & Gentry, for Defendant.

ROSS, J.—This is an original proceeding in *quo warranto* by S. W. McCall against John P. Cull and brings into question the latter's right and title to the office of member of the live stock sanitary board, which office he is occupying. The plaintiff and defendant both claim the right to the office through appointment by the Governor of the state. The facts are not in dispute and are as follows:

On January 5, 1933, the Governor of the state, with the advice and consent of the Senate, appointed three members to constitute the live stock sanitary board, for terms of three years. One of such members was one J. W. Hunt, who resigned soon after his appointment. To fill the vacancy caused by such resignation, defendant, Cull, was on March 17, 1933, appointed. This appointment was an *ad interim* appointment and was never confirmed by the Senate. It was, according to the commission issued to him by the Governor, for a term of two years.

On March 5, 1935, with the advice and consent of the Senate, the Governor appointed defendant for a term of three years, beginning January 5, 1935. The defendant qualified under both appointments, and during all the time from March 17, 1933, until now has been discharging the duties of the office.

On August 14, 1937, the Governor appointed the plaintiff to the office, who has duly qualified and has demanded its surrender to him but defendant has refused to vacate. Hence this action. The sufficiency of these facts to constitute a cause of action is challenged by defendant's demurrer.

The question presented for decision is which of these two parties is entitled to the office. Put in another way, Can an appointee of the Governor's to the live stock sanitary board, whose appointment has not been confirmed by the Senate, lawfully demand the surren-

der of the office of the occupant or holdover? The pertinent part of the statute creating the live stock sanitary board and providing for the appointment of the board members reads as follows:

"Three qualified electors identified with and experienced in the live stock interests in the state shall be appointed by the governor, with the advice and consent of the senate, who shall constitute the live stock sanitary board. Each member shall execute bond to the state, in the sum of two thousand dollars, conditioned for the faithful performance of his duties and the term of office shall be three years." Section 2076, Revised Code of 1928.

*Ad interim* appointments by the appointive power are lawful and the appointee upon his qualification is entitled to the possession of the office if it is vacant. There was a vacancy in the office after Hunt resigned. Section 94, Id., provides, among other things, that a vacancy is created by resignation and lawful acceptance. These concomitants occurred in this case, because it is alleged in the complaint that a vacancy existed as the result of Hunt's resignation. There is no provision in the act creating the live stock sanitary board nor in any other legislative act for the filling of a vacancy on the board. However, section 8, article 5, of the state Constitution, takes care of the situation. It reads:

"When any office shall, from any cause, become vacant, and no mode shall be provided by the Constitution or by law, for filling such vacancy, the Governor shall have the power to fill such vacancy by appointment."

It was under the authority of this constitutional provision that the Governor appointed defendant. The power conferred upon the Governor by this section is limited. He may exercise it to fill a vacancy only when there exists no other provision for filling it.

"When there is a person in possession of an office who is expressly authorized by the statute or constitution to discharge its duties temporarily, until the power upon whom the duty of election or appointment is devolved can regularly act, as where the incumbent holds over—the governor has no power to appoint." 21 Cal. Jur. 852, § 33.

The defendant's term was the rest of Hunt's term and terminated January 5, 1936. The law fixed his term and the Governor had no power to limit it to less than the rest of Hunt's term or to extend it beyond Hunt's term. *State* v. *Willott,* 103 Neb. 798, 174 N. W. 429. The applicable portion of section 56, Revised Code of 1928, to this proposition reads:

"Vacancies occurring in any office, or in the membership of any board or commission, shall be filled only for the unexpired term of such officer or member."

Nor does the fact that his first appointment to the vacancy was not confirmed make any difference. The appointment was lawful until and unless the Senate acted in disapproval. The second appointment, or the one of March 5, 1935, with the advice and consent of the Senate, was made during the term to which defendant was appointed on March 17, 1933, and was made without authority of law. The Governor had no power to make it, the office being occupied by virtue of defendant's first appointment. See cases, *infra.*

Plaintiff contends, however, that defendant by accepting the appointment of March 5, 1935, and qualifying thereunder abandoned his term under his first appointment and thereby created a vacancy. If that is true, then the Governor had the right to appoint plaintiff on August 14, 1937. Abandonment is a matter of intention and, when thought of in connection with an office, implies that the occupant has quit the office and ceased to perform its duties. As long as he continues to discharge the duties of the office, even

though his source of title is two appointments, one valid and the other invalid, it cannot be said he has abandoned it. It was said in *Steingruber* v. *City of San Antonio*, (Tex. Com. App.) 220 S. W. 77, 78:

"A public office may be abandoned. Abandonment is a species of resignation. Resignation and abandonment are voluntary acts. The former is a formal relinquishment; the latter a relinquishment through nonuser. Abandonment implies nonuser, but nonuser does not, of itself, constitute abandonment. The failure to perform the duties pertaining to the office must be with actual or imputed intention on the part of the officer to abandon and relinquish the office. The intention may be inferred from the acts and conduct of the party, and is a question of fact. Abandonment may result from an acquiescence by the officer in his wrongful removal or discharge, but, as in other cases of abandonment, the question of intention is involved."

In *Koven* v. *Stanley*, 84 N. J. L. 446, 87 Atl. 89, 90, it was contended that, because members of a school board had accepted a void appointment, it operated as an abandonment of the office, and the court answering such contentions said:

"This argument savors of legal nicety. The office was that of member of the board of education; it was the same office whatever the source of the title to hold it. What these men did was to qualify and act both under their election and their appointment. Acting under a void appointment was not incompatible with acting under a valid election. The duties, the rights, the conduct was the same whatever the source of title."

See, also, 46 C. J. 980, § 137. We cannot agree that the facts indicate an abandonment of the office by defendant.

■ Defendant's tenure of office continues until his successor qualifies "although his term has expired." This statement is based on that portion of said section 56, *supra*, reading:

"Every officer must continue to discharge the duties of his office, although his term has expired, until his successor has qualified."

In *Sweeney* v. *State,* 23 Ariz. 435, 204 Pac. 1025, 1027, it appeared the regular incumbent of the office of justice of the peace of Winslow precinct, J. F. Mahoney, was re-elected to succeed himself, but before he had qualified he died and Sweeney was appointed by the board of supervisors to fill the vacancy. In *quo warranto* proceedings by the county attorney of Navajo county to oust Sweeney and seat one Robert B. Walton, appointee of a board of supervisors whose personnel had changed, this court held that Sweeney was the lawful incumbent of Mahoney's regular term by virtue of his appointment and that his term extended until his successor was elected and qualified. We there said:

"During the period of the tenure as so extended the office will not become vacant, unless for causes which would create a vacancy in the fixed and regular term, such as the death, resignation, removal, disqualification, or the like, of the incumbent."

We also quoted with approval from *Gosman* v. *State,* 106 Ind. 203, 6 N. E. 349, as follows:

"Upon the assumption that no disqualification existed or has intervened, the right of an incumbent who has been duly admitted into an office continues during the prescribed term, and until his successor is elected and qualified. This results necessarily from the constitutional provision last above quoted. . . . As a consequence, it must result that if no contingency has intervened to disqualify an incumbent from holding the office, or cut off his defeasible title, no vacancy has occurred merely because his prescribed term has expired, if in the meantime the right of his successor has not attached. In such a case the body with whom the power to fill vacancies is lodged, has no function to perform. The office is lawfully occupied by a qualified

incumbent, whose title has not been defeated. It is not vacant."

See, also, *State* v. *Moore,* 49 Ariz. 51, 64 Pac. (2d) 809; *Cragin* v. *Frohmiller,* 43 Ariz. 251, 30 Pac. (2d) 247; *State* v. *Stafford,* 97 Mont. 275, 34 Pac. (2d) 372; *State* v. *Levy Court of New Castle County,* 3 W. W. Harr. 554, 33 Del. 554, 104 Atl. 642.

The courts of the states whose constitutions and statutes are similar to ours are in practical accord with the rule announced by this court. We think our previous construction of section 56, *supra,* as also of section 13, article 22, of the state Constitution, which expressly extend the tenure of an officer until his successor is elected or appointed and qualified, is correct. We see no reason for changing the rule heretofore announced, believing it to be the sounder and better and the one adopted by practically all the courts of the country.

The Governor's power to appoint, as conferred by section 8, article 5, of the Constitution, *supra,* is when there is a "vacancy." If there is no vacancy, he cannot appoint an officer because the office is occupied. If, then, in this case the Governor had the right on August 14, 1937, to appoint the plaintiff, he must have derived such right from some provision of law other than that conferred by said section 8, article 5, of the Constitution. The only other provision of law that gives him any such authority to appoint a member of the live stock sanitary board is section 2076, *supra,* creating the board, and it confers such power upon the Governor only with the advice and consent of the Senate. Under this statute, his power to appoint is in conjunction with the Senate. The two must concur. The Governor cannot exercise the power alone. He may put into motion this joint power by first appointing the officer, but such appointment is ineffective until and unless ratified or con-

firmed by the Senate. The abstract rule is well stated in 22 Ruling Case Law, 433, section 84, as follows:

"Wherever under a constitutional or statutory provision the appointment is required to be made with the approval of some officer or body, such appointment must be approved before the person is legally entitled to the office. If on the expiration of the term of a public officer, an appointment of a successor is made by the governor but it is not confirmed by the state senate as required by a law of this type such successor does not obtain the right to enter on the duties of the office but the former incumbent may hold over until a successor is properly appointed and confirmed."

The cases supporting this text are many, a few of which are: *State* v. *Boucher,* 3 N. D. 389, 56 N. W. 142, 145, 21 L. R. A. 539; *State* v. *Bryson,* 44 Ohio St. 457, 8 N. E. 470; *Ash* v. *McVey,* 85 Md. 119, 36 Atl. 440; *People* v. *Bissell,* 49 Cal. 407; *People* v. *Tilton,* 37 Cal. 614; *People* v. *Tyrrell,* 87 Cal. 475, 25 Pac. 684; *State* v. *Stafford, supra; State* v. *Rogers,* 93 Mont. 355, 18 Pac. (2d) 617; *People* v. *Shawver,* 30 Wyo. 366, 222 Pac. 11; *State* v. *Johnson,* 135 Wash. 109, 237 Pac. 12; *Schulte* v. *City of Jefferson,* 221 Mo. App. 369, 273 S. W. 170.

In *State* v. *Boucher, supra,* the court said:

"It is the policy of the statute, as well as its clearly-expressed purpose, to require the action of both the governor and senate in filling the important offices of trustees of state institutions, and not to allow them to be selected by the independent action of the executive, except in those cases of vacancies, not frequently occurring, where an executive appointment can be made temporarily to fill an actual vacancy. It has been said that the law abhors a vacancy in an office, but, in our judgment, a vacancy in the office of a trustee of one of the public institutions of this state does not come about from the mere expiration of the limited term, even when that event is coupled with the fact that the senate had adjourned without confirming successors of those whose terms had expired by limitation of time. It

seems quite clear to us that the vacancy referred to in the statute, and which alone gives the executive the right to make a temporary appointment, relates only to such actual vacancies as may arise from death, resignation, and the like. The expiration of a definite term, and failure of the senate to confirm successors to those whose terms have expired, are certainly not among the causes enumerated in the Code which will create a vacancy in office. Pol. Code, § 2, c. 22; Comp. Laws, § 1385. A 'vacancy in office,' within the meaning of the law, can never exist when an incumbent of the office is lawfully there, and is in the actual discharge of official duty. Similar statutes of other states, which are identical in their meaning, and generally in their language, with that we are considering, have quite frequently been construed by the courts of last resort in other states, and the construction we have placed upon our statute is sustained by the unanimous current of authority.''

The power exists in the Governor and the Senate jointly to appoint and confirm a member of the live stock sanitary board, and under the facts of this case such power could have been exercised at any time after January 5, 1936, since on that date the Hunt term ended. The legislature was in a regular and three special sessions during 1937, and at any of such sessions, no doubt, the Senate would have concurred in plaintiff's selection by the Governor to such office. The legislature has made such concurrence necessary to a valid appointment to a regular term as fixed by the statute, and, as it has not been obtained, plaintiff is not entitled to the possession of the office.

The demurrer is sustained, and the judgment is that the complaint be dismissed.

McALISTER, C. J., and LOCKWOOD, J., concur.