185 P.2d 315

**WESTOVER v. STATE.**

No. 973.

Supreme Court of Arizona.

Oct. 6, 1947.

C. D. McCauley, of Winslow, Wilson, Compton & Wilson, of Flagstaff, and John P. Clark, of Winslow, for appellant.

John L. Sullivan, Atty. Gen., John W. Rood, Chief Asst. Atty. Gen., Burr Sutter, Asst. Atty. Gen., and William P. Mahoney, of Phoenix, for appellee.

Dodd L. Greer, of Holbrook, amicus curiæ.

FARLEY, Superior Judge.

The defendant was informed against for the crime of misappropriation of public money. The information was signed and filed in the Superior Court of Navajo County by John L. Sullivan, the Attorney General, on March 30, 1945. A plea of not guilty was entered by the defendant and trial of the case was first had on June 18,

1945, which trial ended with the jury failing to agree upon a verdict. On November 26, 1945, the case was again called for trial and the jury again failed to reach a verdict. On February 25, 1946, the defendant appeared for trial for the third time and the case proceeded to the point where a jury was selected and evidence was offered by the state.

On the following day, February 26, 1946, the Honorable John D. Lyons of Pima County, to whom the cause had been assigned for trial, became ill and ordered the case continued until March 4, 1946. However, on March 2, 1946, the trial judge entered an order "that due to the continued incapacity of the presiding judge, the order continuing the trial herein to March 4, 1946, is vacated; that the trial of this matter is further continued indefinitely to a date to be fixed by future order of the court, and the jury is discharged."

On September 17, 1946, the order of March 2, 1946, was amended to include the following: "That neither the Defendant nor his counsel are present at the time of making this order but that the Court has consulted the Defendant's counsel, Mr. C. B. Wilson, and has been advised by him that it is agreeable to discharge the jury under the circumstances, provided that consent is concurred in by his co-counsel, Mr. McCauley, or, if he cannot be reached, by the Defendant; that the Court has been unable to reach Mr. McCauley, but has consulted with the Defendant who has advised him that in view of the Judge's illness it is agreeable with him to discharge the jury if Mr. Wilson has no objections. That this order is not entered in open court, but in Chambers, and that the jury is not present and that the Sheriff is authorized and directed to notify the individual jurors not to return on March 4, 1946, as previously ordered. That this order is made in this manner because the presiding Judge is ill; that he has been confined to his bed constantly from February 26, 1946 until noon of the present day; that there is no accommodation in the local hospital and no proper facilities for convalescence at the hotel where he is staying and it is imperative that he return to Tucson at once by reason of his illness, and it is therefore not possible to await the return of the jury or the attendance of counsel so that this order might be entered in open Court in their presence. Approved 9-17-46, John D. Lyons, Presiding Judge."

The case proceeded to trial on the date of the amended order before a new jury and resulted in a verdict adjudging the defendant guilty, from which verdict he has appealed.

Defendant's principal contentions are that the trial court erred: (1) in denying defendant's motion to dismiss because more than 60 days had elapsed since the last trial; (2) in denying defendant's motion to quash on the ground of previous jeopardy because of the proceedings begun on February 25, 1946, and terminating on

March 2, 1946; and (3) in denying defendant's motion to quash on the ground that the information was not subscribed or presented by the County Attorney but by the Attorney General without authority of law.

The first contention urged by defendant is based upon the proposition that since the trial, which resulted in a verdict of guilty, occurred more than 60 days after the last trial such lapse of time is in violation of article 2, section 24, Arizona Constitution, and section 44-1503, A.C.A.1939. The Constitution provides in general terms that an accused has the right to a speedy trial but the code section relied upon, which was enacted pursuant to the Constitution, provides that " * * * when a person has been indicted, or informed against, for an offense, if he is not brought to trial for the offense within sixty (60) days after the indictment has been found or the information filed, the prosecution shall be dismissed * * * unless good cause to the contrary is shown, by affidavit, or unless the cause has not proceeded to trial because of the defendant's consent or by his action."

■ The facts disclose that the defendant was not tried within the 60-day period but it also appears that the delay was concurred in by counsel for defendant, who wrote to the Attorney General on May 10, 1946, which was 68 days after the jury had been discharged on March 2, 1946, to the effect that the defendant would stipulate to a trial setting by the presiding judge in his home county, and further indicating that the resident judge was uncertain as to when a jury would be called but had stated that a jury call would be made the latter part of July. This amounted to express acquiescence in the delay beyond the statutory period and authorized the trial judge to set the case for trial whenever the resident judge had a jury available.

The rule announced by this court in the cases of Hunter v. State, 43 Ariz. 269, 30 P.2d 499; Hernandez v. State, 40 Ariz. 200, 11 P.2d 356; and in King v. State, 23 Ariz. 49, 201 P. 99, supports the state's position that the statutory and constitutional guaranty for a speedy trial may be waived. The record clearly shows that the defendant not only acquiesced in the delay but actively encouraged as late a trial date as possible.

■ The next contention deals with the plea of double jeopardy. It will be noted that the trial which began on February 25th terminated on March 2, 1946, because of the illness of the presiding judge. It is settled beyond controversy that a jury having been impaneled and sworn and the proceedings commenced jeopardy attaches and, unless removed for some legal reason, the one in jeopardy cannot be again tried for the same offense. However, the courts are likewise in accord that the existence of the necessity for the discharge of the jury removes the jeopardy and a new trial may be had. This rule is recognized in section 44-1932, A.C.A.1939, as follows: "Re-trial.

—In all cases where a jury is discharged or prevented from giving a verdict by reason of an accident or other cause, except where the defendant is discharged from the indictment or information during the progress of the new trial, or after the cause is submitted to them, the cause may be again tried."

 The authorities are extensive which hold that sickness of the trial judge is legal ground for discharging the jury and in such case jeopardy does not attach. 15 Am.Jur., Criminal Law, sec. 420; 22 C.J.S., Criminal Law, § 259; People ex rel. v. Barr, 248 N.Y. 126, 161 N.E. 444. As was said in the case of State v. Emery, 59 Vt. 84, 7 A. 129, 131: " * * * The jeopardy of the respondent by the commencement of such trial is dependent upon the presumption that the tribunal will continue legally organized, with the respondent in charge, to the end of the trial, and in the end pronounce a valid judgment for or against the respondent. In case some matter occurs in the course of the trial which conclusively rebuts this presumption, it also rebuts the conclusion or presumption of the jeopardy of the prisoner by reason of the commencement of the trial. * * * "

The amended order of September 17th made by the trial judge clearly showed the necessity for discharging the jury and constituted a judicial determination of such necessity.

 The order further indicated that the jury was discharged with defendant's consent. The right of a defendant to insist that when the trial has once commenced it shall proceed to a verdict is personal in its nature, being designed for protection against arbitrary and oppressive criminal proceedings, and therefore it may be waived. 15 Am.Jur., Criminal Law, sec. 407.

The third point relied upon by the defendant questions the right of the Attorney General to file the information upon which the defendant was tried. The defendant's position is that the power to subscribe and present an information is solely within the province of the county attorney of the respective counties, and in support of that position he cites sec. 17-902, A.C.A.1939, which provides that

"The county attorney is the public prosecutor of the county and shall:

"1. Attend the superior and other courts within the county, and conduct, on behalf of the state, all prosecutions for public offenses;

"2. * * *

"3. Draw all indictments and informations, defend all actions brought against the county, prosecute all recognizances forfeited in the courts of record, and all actions for the recovery of debts, fines, penalties and forfeitures accruing to the state or his county;* * * "

and also section 44-705, which section requires that all informations shall be subscribed by the county attorney.

The Constitution of Arizona, in article 5, section 9, provides that the powers and duties of the Attorney General shall be as prescribed by law. The legislature has provided by section 4-502, A.C.A.1939, that the Attorney General shall

"1. * * *

"2. Appear in the Supreme Court and prosecute or defend all causes therein to which the state, or any officer thereof in his official capacity, is a party; *and when required by the governor to appear for the state or any officer thereof, and prosecute or defend in any other court any cause wherein the state is a party or is interested;*

"3. Exercise supervisory powers over the county attorneys in all matters pertaining to their offices, and may require of them reports as to the conditions of their public business; *and may, when he deems the same necessary, and shall when directed by the governor, assist the county attorney of any county in the discharge of his duties;* * * *." (Emphasis supplied.)

This court in the case of Shute v. Frohmiller, 53 Ariz. 483, 90 P.2d 998, 1001, held: " * * * From this it follows necessarily, as most courts hold, that under constitutions containing provisions similar to those in Arizona, the attorney general is not a common-law officer, one upon whom 'the duties and powers of the attorney general as the same *was* known in common law' have been engrafted but is one whose powers and duties may be ascertained only by resort to the statutes. * * *"

■ In the light of that decision and the rule of stare decisis it is clear that in Arizona the Attorney General has no common-law powers, and that consequently his authority to sign the information must be found either expressly or by reasonable intendment in the statutory law. It appears from the record that on January 5, 1945, the Governor instructed the Attorney General "to immediately take the necessary steps and institute the necessary proceedings and actions to the end that this money be restored to the public treasury at the earliest possible moment; you are also directed to take the necessary steps to fix the responsibility for the shortage and to bring the guilty to justice."

■ The defendant contends that the Governor's instructions to the Attorney General did not empower that officer to initiate the prosecution but merely authorized him to assist in such prosecution; and that until the county attorney had been requested to act and had refused to do so, the Attorney General was powerless to proceed with the prosecution.

In our view that position is not tenable. The Supreme Court of Kansas, in the case of State v. Bowles, 70 Kan. 821, 79 P. 726, 728, 69 L.R.A. 176, held that " * * * by an act approved June 3, 1861 (Laws 1861, p.216, c. 58), it was provided that the Attorney General, whenever required by the Governor or either branch of the Legislature, should appear for the state and prosecute or defend, in any court, or before

any officer, in any cause or matter, civil or criminal, in which the state might be a party or interested. The substance of this act has been preserved in all subsequent revisions of the law, and it now appears as section 271, Gen.St.1901. The experience of members of the Legislature during territorial times had taught them the necessity of a state government equipped with sufficient power to protect public rights and redress public injuries throughout the entire state, independent of the attitude of local authorities who might be indifferent, incapable, or even antagonistic. They had suffered from the baleful manifestations of sectionalism within the state as well as between different states, and the purpose was to make the authority of the government felt, through its chief law officer, in every part of its territory, * * *." and, "* * * The language of the statute indicates that the intention was to grant plenary power to the Attorney General to this end, and he was invested with full authority to use all the means afforded by the law to meet the requirements of any situation and fully protect the interests of the state. When directed by the Governor or either branch of the Legislature to appear and prosecute criminal proceedings in any county, he becomes the prosecuting attorney of that county in those proceedings, and has all the rights that any prosecuting officer there may have, including those of appearing before the grand jury, signing indictments, and pursuing cases to final determination."

The language of the court in the case of Ex parte Kelly, 45 Okl. 577, 146 P. 444, 446, is appropriate in view of the defendant's contention in this case, and we quote therefrom: "If it be held, as contended by counsel for petitioner, that the authority of the Attorney General is limited to the right of appearing in proceedings already pending, it would amount to a denial of his right to appear in any case where, by reason of the failure, neglect, or refusal on the part of the local authorities to institute proceedings, the same has not been done. The purpose of this statute in our judgment is to authorize the Governor, who is vested by law with the supreme executive authority, and clothed with the power of executing the laws, in a proper case, where from any reason the law is not enforced, to put in motion the machinery of the law to maintain its authority. Conditions might arise where local officials would refuse to enforce the law, and flagrant violations thereof might occur with impunity, unless there be some power by which these conditions could be remedied; and when, in the judgment of the Governor, the laws are not being properly enforced by local officials, it was clearly contemplated by this statute that upon his request the Attorney General might in person take charge of the conditions, and in that situation would be clothed with all the authority of the local officers, and could take any steps necessary to institute any proceeding, or carry the same on to a final determination, notwith-

152

standing the local officials might refuse to do so. * * *"

See also People v. Gibson, 53 Colo. 231, 125 P. 531, Ann.Cas. 1914B, 138; Luther v. State, 18 Okl.Cr. 664, 197 P. 533; State v. Taylor, 59 Idaho 724, 87 P.2d 454; State ex rel. Nolan v. Dist. Ct., 22 Mont. 25, 55 P. 916. It is true that the rule in Kansas in so far as the general powers of the Attorney General are concerned has been broadened since the decision in the case of State v. Bowles, supra. See State v. Finch, 128 Kan. 665, 280 P. 910, 66 A.L.R. 1369. However, the reasoning of the court in that case in its analysis of the power of the Attorney General to act under a directive from the governor or the Legislature is most sound and worthy of adoption by this court, nor is it in any wise inconsistent with the previous expressions of this court in the case of Shute v. Frohmiller, supra.

We have examined with care the other assignments of error, in addition to the principal points discussed at length in this opinion, but have concluded that they are not well founded. For the foregoing reasons the judgment appealed from is in all respects affirmed.

STANFORD, C.J., and LaPRADE, J., concurring.

NOTE: Judge Levi S. UDALL, having disqualified himself, the Honorable Gordon FARLEY, Judge, Superior Court, Santa Cruz County, was called to sit in his stead.