231 P.2d 428

**LOCKWOOD, Post Auditor, v. JORDAN, State Auditor.**

No. 5508.

Supreme Court of Arizona.

May 7, 1951.

Edward Jacobson, of Phoenix, for petitioner.

John C. Hughes, Richard H. Elliott, of Phoenix, for respondent.

PHELPS, Justice.

This is an original proceeding in mandamus brought by petitioner Kenneth D. Lockwood, Post Auditor, against Jewel W. Jordan, State Auditor, respondent, to compel her to issue to him a warrant in payment of his salary as post auditor of the state of Arizona from March 16 to March 31, 1951.

The action is based upon the provisions of House Bill 74, Chapter 28, Session Laws of the 19th Legislature of the state of Arizona, First Special Session.

The Act creates the office of post auditor, prescribes his qualifications, duties, the manner of his appointment, term of office, his salary, and makes appropriation for the expenses of administration of the office including necessary salaries. The bill was approved by the Governor March 18, 1950.

Section 5 of the Act providing for the appointment of post auditor reads as follows: "The post auditor shall be appointed by the president of the senate and the speaker of the house of representatives with the advice and consent of a majority of the senate and of the house of representatives. In the event of a vacancy in the office of post auditor while the legislature is not in session, or if in session fails to act, such vacancy shall be filled by a person named by a majority vote of the following: the Governor, the president of the senate and the speaker of the house of representatives. Such appointment to be confirmed at the next subsequent regular or special session of the legislature by the majority vote of the senate and of the house of representatives."

Section 6 provides that: "The term of office to which the first post auditor is appointed shall commence on the first day of July, 1950, and shall expire on the 30th day of June, 1955, and therefore the term shall be for four (4) years." Salary was fixed at the sum of $7,200 per annum.

On October 1, 1950, the post auditor was appointed by the Governor, the president of the senate and the speaker of the house of representatives under the provisions of section 5 above quoted.

Thereafter on the second Monday in January, 1951, the first regular session of the 20th Legislature convened and adjourned March 18, 1951. During such session petitioner's name was not presented to it for confirmation as the Act provided.

However, on March 18, 1951, following the adjournment of the first regular session of the 20th Legislature petitioner was again appointed to such position in the same manner as before. It will be observed that the reappointment of petitioner was made on the same day the legislature adjourned.

Petitioner's salary was paid from the date of his appointment until March 16, 1951. On March 31 following, respondent refused to honor petitioner's payroll including his salary from March 16 to March 31. On April 2, 1951, petitioner filed an application with this court for the issuance of a writ of mandamus to compel respondent to issue her warrant in payment of his salary as hereinabove stated.

Respondent has set up in substance in her answer the following defenses. First, that chapter 28, supra, is illegal and void for the reason that it violates article 3 and article 5, sections 1 and 9, of the Arizona Constitution and therefore that petitioner was not in fact an officer of the state of Arizona during the period for which the claim for salary is filed; secondly, that if the Act is held to be constitutional the appointment of petitioner on October 1, 1950, and the failure of the legislature at its regularly convened session beginning the second Monday in January, 1951, to confirm his appointment had the legal effect of vacating said office and that the subsequent attempt to again appoint him was also illegal and void and that petitioner was not a public officer during the period and therefore not entitled to be paid out of the funds appropriated for the payment of the salary of post auditor. Article 3 of the constitution reads as follows: "The powers of the government of the state of Arizona shall be divided into three separate departments, the Legislative, the Executive, and the Judicial; and, except as provided in this constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others."

Section 1, article 5 of the constitution provides in so far as here material:

"The executive department of the state shall consist of governor, secretary of state, state auditor, state treasurer, attorney-general, and superintendent of public instruction each of whom shall hold his office for two years beginning on the first Monday of January next after his election, except that the terms of office of those elected at the election provided for in the Enabling Act approved June 20, 1910, shall begin when

the state shall be admitted into the Union, and shall end on the first Monday in January, A. D. 1913, or when their successors are elected and qualified.

\* \* \* \* \* \*

"The officers of the executive department during their terms of office shall reside at the seat of government, where they shall keep their offices and the public records, books, and papers. They shall perform such duties as are prescribed by this constitution and as may be provided by law."

Section 9 of article 5 provides: "The powers and duties of secretary of state, state treasurer, state auditor, attorney-general, and superintendent of public instruction shall be as prescribed by law."

We cannot agree with respondent's contention that chapter 28 violates either article 3 or article 5, sections 1 and 9, of the Arizona Constitution.

Adverting first to the contention that the Act under consideration violates article 5, sections 1 and 9 of the state constitution, the precise question was presented to this court in the case of Shute v. Frohmiller, 53 Ariz. 483, 90 P.2d 998, 1001. There the petitioner had been employed by the Colorado River Commission as its counsel under authority granted the commission in the act creating it. After entering upon his duties and after a portion of his monthly salary had accrued he presented his claim to the state auditor for audit and allowance. The auditor denied such claim upon the ground that the act creating the commission was unconstitutional and void in so far as it authorized the appointment by the commission of special counsel to represent it. The reason given was that the constitution of the state, by creating the office of attorney general in Arizona, had engrafted upon him all the powers and duties of the attorney general as the same was known at common law.

This court in that case observed that if the constitution had created the office of attorney general without referring to its powers and duties it might have been true under the authorities cited that the term "attorney general" had been used in its common law acceptation since Arizona is a state in which the common law prevails; but that when the constitution provided in the same article in which it created the office of attorney general that he should perform such duties as were prescribed by the constitution and as may be provided by law and that his duties "shall be 'as prescribed by law'" it could not be said that the constitution was silent as to his powers and duties; that while it was true the constitution did not enumerate his duties but in stating that they shall be as "prescribed by law" it referred to them and clearly made it the duty of the legislature to say what they should be. The court asserted that the expressions, "as provided by law" and "as prescribed by law" are susceptible of no other construction. It

then concluded that the attorney general was not a common law officer, upon whom "the duties and powers of the attorney general as the same was known at common law" had been engrafted but was one whose powers and duties could be ascertained only by resort to the statutes. The court further said:

"Notwithstanding the holding in these cases, (cases cited by respondent) we are clearly of the view that the mere naming of the attorney general in the constitution of this state does not amount to an implied restriction on the authority of the legislature in prescribing his duties.. It is true in this state, as in others, that the office of attorney general, together with the other executive offices created by the constitution, is imbedded in that instrument, but it is equally true that the authority of the legislature to prescribe what the duties and powers of those occupying these offices shall be is imbedded there also, and, this being true, no common-law powers or duties can attach to that office but only those prescribed by statute. This statement, we think, completely answers the contention of counsel for respondent that 'the framers of the constitution in providing for the election of the attorney general by the people thereby reserved unto the people the right to have the well known functions of the attorney general discharged only by a person elected attorney general, and that the naming of this officer in the constitution amounts to an implied restriction upon legislative authority to create other and appointive officers for the discharge of such functions.' "As just stated, the provision that the attorney general's powers and duties 'shall be as prescribed by law' is as much a part of the constitution as that portion of it creating the office itself and fully as binding, but it is a useless provision if it be true that the mere naming of the office in that instrument limits the legislature in . prescribing the functions the person filling it must perform. Naturally the framers of the constitution intended, when they created the office of attorney general and made it elective, that its duties would be discharged by the person elected to it, but in view of the fact that they provided also at the same time and in the same instrument that his powers and duties should be 'as prescribed by law,' meaning by legislative act, the intention was that he would perform the duties assigned him by the legislature. And in saying what these shall be no express restriction is placed on that body's power, and none is implied other than that forbidding the imposition of duties that would interfere with the maintenances and preservation of the independence of the three branches of government. Any act of the legislature imposing upon an executive officer duties properly belonging to one of the other two branches would necessarily be invalid, even if enacted pursuant to the constitutional provision empowering it to prescribe what the functions of that office should be. With this exception the legislature's power to add to or take from these duties from time to

time is full and complete under the provision stating that his duties 'shall be as prescribed by law,' as well as under section 2, article XXII of the constitution which provides that the laws of the Territory of Arizona, and this includes those prescribing the duties of the attorney general, 'shall remain in force as laws of the State of Arizona until they expire by their own limitations or *are altered or repealed by law.*' Clearly, the framers of the constitution did not intend to authorize the legislature to alter or repeal the territorial statutes that prescribed his duties and remained in force as laws of the state and at the same time withhold from it the power to take similar action as to any common-law duties he may have had.  People v. Santa Clara Lumber Co., supra." [55 Misc. 507, 106 N.Y.S. 624].

■ This constitutes a complete answer to the claim of respondent that the legislature is without authority to enact Chapter 28, supra.  The powers and duties of the auditor under the provisions of section 9 of article 5 shall be such as are "prescribed by law".  No express restrictions are imposed upon the legislature by the constitution with respect to the powers and duties which shall be exercised by the state auditor.  We have so often held that in the absence of such restrictions the legislature possesses plenary powers to enact such laws as its judgment may dictate that it is unnecessary to cite authorities to sustain it.

Shute v. Frohmiller, supra, has been reaffirmed or at least cited with approval in a number of cases including Industrial Commission v. School District No. 48 of Maricopa County, 56 Ariz. 476, 108 P.2d 1004; State ex rel. Frohmiller, State Auditor, v. Hendrix, 59 Ariz. 184, 124 P.2d 768, and Westover v. State, 66 Ariz. 145, 185 P.2d 315.

Notwithstanding the fact that cases cited by respondent from the states of Idaho, Washington, Oregon and others are persuasive, we are committed to the opposite view and do not feel disposed to overrule our former opinions which we deem conclusive in this case.

It is next claimed by respondent that the duties of the state auditor are by the constitution, executive in nature and that the provisions of chapter 28, supra, placing appointive power of the post auditor with the president of the senate and the speaker of the house of representatives has the ultimate effect of changing its character from that of an executive office to one of a legislative character; that at least it places it under the control of the legislative branch of government which is violative of article 3 of the Arizona Constitution providing that the legislative, executive and judicial branches of government shall be kept separate and distinct and that no one of such departments shall exercise the powers properly belonging to either of the others.  This question has also been considered by this court and a contrary view

to that entertained by the respondent has been reached. In the case of Dunbar v. Cronin, 18 Ariz. 583, 164 P. 447, 454, the court had under consideration a law enacted by the legislature providing for the establishment of a state library with a law and legislative reference bureau providing for the appointment of a board of curators and librarian, defining their duties and making an appropriation therefor. The law provided, among other things, that: "Until otherwise provided by law Con P. Cronin is appointed legislative reference librarian, and shall serve until his successor is appointed. Any vacancy shall be filled by the board of curators."

The act provided that one of the duties of the librarian was to maintain a legislative information bureau for the use and reference of the members of the legislature, the heads of the several departments of state government and such citizens of the state as may desire to consult the same. The act further provided that the board of curators should not exercise their power of appointment of the librarian during the incumbency of the librarian appointed by the provisions of the act.

The board did later undertake to exercise its powers and appointed Dunbar. This appointment was made while Cronin was still serving under his appointment by virtue of the terms of the act itself. Quo warranto proceedings were instituted by appellant Dunbar against the appellee to determine title to the office. The appellant in that case based his contention upon the proposition that the legislature was without power to appoint a librarian as violative of article 3 of the constitution to which reference is above made. He claimed that the appointment to office is an executive function and belongs to the executive department, thus challenging the right of the legislature to appoint the appellee as librarian. The court in discussing the matter said:

"All powers of government primarily are lodged in the people. That is true with reference to the selection of their officers. * * *

"The people have reserved to themselves the right to choose all precinct, county, and state officers provided for in the Constitution, except three members of the state board of education (article 11, § 3), regents of the University and the governing boards of other state educational institutions (article 11, § 5), and a state examiner (article 22, § 18). Indeed they were so jealous of this power and right to select their own officers that they provided for an advisory vote of the people for United States Senator (article 7, § 9) quite a while before the federal Constitution was amended providing for the election of United States Senators by popular vote.

"The only instances under the Constitution in which the power of appointment is made exclusively executive are the specific ones above enumerated, and such others as may occur when an office becomes

vacant and the law or the Constitution has provided no mode for filling such vacancy. * * * "

█ Legislators may not only provide a mode for filling a vacancy in office, but it may create offices when not prohibited by the constitution and provide for the election of the officers by the people, allow for their appointment by a board or commission of their creation, or by the executive, or may itself make the appointment.

"We think it is quite apparent that the framers of our Constitution and the people who adopted it treated and considered the right to select and choose their officers as a political question, and surrendered that right to the different departments of state only in so far as the inherent necessities and proprieties seemed to require it. Where the people have not provided for the manner of filling offices newly created, or vacancies in office, they have left to the Legislature, as their representatives, such duties." [164. P.2d 450.] Citing Riley v. State, 43 Okl. 65, 141 P. 264.

The court in that case referred to decisions of other states in which it was held that if the office was an executive office the appointment should be made by the executive department. If legislative, it should be made by the legislative department, etc. But it expressly declined to concede that such was the law in this state.

█ We therefore hold that since there is no restriction in the constitution against the exercise of such powers by the legislature that it was acting fully within the scope of its legislative authority in providing for appointment of post auditor to be made as in the Act provided.

We do not think the Act has the far-reaching result claimed by respondent. Section 3 thereof provides that many of the duties to be discharged by the post auditor are "for the primary purpose of informing the legislature for its guidance in formulating legislative policies concerning legislation and appropriation." If and when legislation is passed imposing duties upon an officer of one of the coordinate branches of government which properly belong to either of the coordinate branches, article 3 of the Arizona Constitution may be invoked to preserve their independence.

The next question presented is, assuming the Act to be constitutional, did the failure of the legislature to confirm the appointment of the post auditor at its next session after his appointment have the effect of creating a vacancy in the office? It is the contention of the petitioner that it did not and of the respondent that it did have the effect of creating a vacancy. It will be necessary to consider the language of pertinent statutes to reach a proper solution of the question.

█ Let us observe that section 6 of the Act quoted above provides that the term of the first post auditor shall commence on July 1, 1950, and expire on June 30, 1955. The record before us contains no document evidencing the official appointment of

petitioner as post auditor but whatever else it may contain we must conclusively presume that such appointment was for a period ending June 30, 1955, for the reason that the agency empowered to make the appointment was without authority to do otherwise. McCall v. Cull, 51 Ariz. 237, 75 P.2d 696.

By the express language of the statute an ad interim appointment to fill a vacancy in the office may be made by the Governor, the president of the senate and the speaker of the house of representatives. The power to appoint thus granted to these officers is in conjunction with the majority of the members of the house of representatives and of the senate who must concur. Such appointment is not complete until confirmed by the members of the legislature as in the · Act provided. By authorizing an ad interim appointment, however, the Act impliedly grants to the appointee the right to take charge of such office and enter upon the discharge of his official duties. State ex inf. Major, ex rel. Sikes v. Williams, 222 Mo. 268, 121 S.W. 64, 67 C.J.S., Officers, § 32. An appointment made when the legislature is not in session is lawful until and unless the majority of the senate and the house of representatives act in disapproval thereof. McCall v. Cull, supra.

No action was taken by the legislature with reference to petitioner's ad interim appointment during its session next subsequent to his appointment. Therefore petititioner is entitled to continue in possession of such office, discharge the duties, and enjoy the emoluments thereof until June 30, 1955, unless by disapproval of the legislature his tenure of office is otherwise terminated in the manner provided in the Act.

His right to continue in office does not flow from either the constitutional or statutory provision making it the duty of a public officer to continue to discharge the duties of his office after his term of office has expired and until his successor is elected or appointed and qualifies. This is true because petitioner's term of office has not expired. Those provisions apply only after the term of office has expired. Article 22, section 13, Arizona Constitution; section 12–104, A.C.A.1939; Sweeney v. State, 23 Ariz. 435, 204 P. 1025. Petitioner's right to remain in office arises out of the provisions of the Act creating the office. As above stated, having been lawfully appointed he is entitled to continue in office under his defeasible title until the end of the term to which he is appointed unless by affirmative action by the legislature his appointment is disapproved, or theretofore revoked by the appointive power.

We therefore hold the Act creating the office of post auditor violates no provision of the Arizona Constitution and that petitioner is lawfully in possession of such

office under his appointment of October 1, 1950, and entitled to all of the emoluments thereof.

The alternative writ of mandamus heretofore issued is made permanent.

UDALL, C. J., and STANFORD, DE CONCINI and LA PRADE, JJ., concur.